(54 N. W. Rep. 541.)

---

WASHBURN MILL COMPANY *vs.* S. J. BARTLETT, *et el.*

Opinion filed December 3rd, 1893.

**Foreign Corporation—Right to do Business.**

> Sections 3190, 3192, Comp. Laws, which prescribe the terms upon which foreign corporations may do business in this state, do not render contracts entered into with such corporations, before compliance with the terms of said sections, unenforceable and void.

**Contracts With—Estoppel.**

> Parties who have contracted with such foreign corporation as a corporation, and received and retained the benefits of such contract, cannot, in an action by such corporation, based thereon, raise the question of noncompliance with the terms of said sections. .

Appeal from District Court, Sargent County; *Lauder*, J.

Action by the Washburn Mill Company against S. J. Bartlett and another to foreclose a real estate mortgage. A demurrer to the answer was overruled, and plaintiff appeals.

Reversed.

*J. E. Bishop*, (*Akers & Lancaster of Counsel*,) for appellant.

Defendant's answer is insufficient to raise the question of non-compliance with the statute. It pleads legal conclusions. *Gull River Lumber Co.* v. *Keefe*, 41 N. W. Rep. 743, 6 Dak. 160. The defense that a foreign corporation has not complied with the statute, by filing its articles of incorporation and appointing a resident agent must be specially pleaded. *American Buttonhole Co.* v. *Moore*, 2 Dak. 280, 8 N. W. Rep. 131. The consideration for contracts is presumed to have been lawful. Illegality is never presumed, it must be alleged and proved. *St. Louis etc. Ry. Co.* v. *Fire Association*, 18 S. W. Rep. 43; *Dahl* v. *Montana Copper Co.*, 10 S. C. Rep. 97; *White River Lumber Co.* v. *Southwestern Imp. Ass'n*, 18 S. W. Rep. 1055. The fact of violation of law in one transaction, will not inure to a stranger as a defense to an action on a contract not in violation of law. *Northwestern Mutual Ins. Co.* v. *Brown*, 36 Minn. 108, 18 S. W. Rep. 43, and 1055, *supra*. Penal statutes are strictly construed and a forfeiture will not be enforced unless such appears to have been the unmistakable intention of the legislature. *Toledo etc. Co.* v *Thomas*, 11 S. E. Rep. 37; *United States* v. *Athens Armory*, 31 Ga. 344. There is a clear distinction between an intent to prohibit a transaction until a certain thing is done (when the primary object is actual prohibition) and an intent to compel the performance of an act collateral to the transaction. *Larned* v. *Andrews*, 106, Mass. 435, *Aiken* v. *Blaisdell* 41, Vt. 655; *DeMers* v. *Daniels*, 39 Minn. 158; *Pangborn* v. *Westlake*, 36 Ia. 546; *Strong* v. *Darling*, 9 Ohio, 201. The restriction imposed by statute is a simple inhibition—no one but the state can object. The contract is valid as to the defendant and he has no right to raise the question of *its invalidity*. *Whitney* v. *Wyman*, 101 U. S. 392, *Nat'l Bank of Genessee* v. *Whitney*, 103 U. S. 101; *Fortier* v. *New Orleans Bank*, 112 U. S. 439, 5 S. C. Rep. 234; *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405, 5 S. C. Rep. 213; *Frills* v. *Palmer*, 132 U. S. 293, 10 S. C. Rep. 93. A person who has had the benefit of an agreement cannot be permitted in an action founded upon it to question its validity. *Union Nat'l Bank of St. Louis* v. *Matthews*, 98 U. S. 621; *Wright* v. *Lee*, 51 N. W. Rep. 706.

*Thorp* and *Ellsworth*, (*Ball & Watson* of Counsel) for respondent.

It is the right of any state to entirely exclude foreign corporations from doing business as such corporations within its territorial limits. *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; *Home Ins. Co.* v. *Davis*, 29 Mich. 238, 8 Am. and Eng. Enc. Laws 333. It follows that the state may impose such conditions as may be deemed expedient, upon foreign corporations doing business within the state and may declare that all contracts made without compliance shall be void. *Doyle* v. *Ins. Co.*, 94 U. S. 535; *W. U. Tel. Co.* v. *Mayer*, 28 Ohio St. 539.

BARTHOLOMEW, J. The appellant herein, the Wasburn Mill Company, is a corporation chartered by the State of Minnesota, and organized and existing under and by virtue of her laws. It brought this action in the District Court for Sargent County, in this state, to foreclose a real estate mortgage executed by S. J. Bartlett and F. G. Bartlett, the respondents herein, to secure a promissory note given by respondents to appellant. The answer admits the execution of the note and mortgage, and as a sole defense thereto alleges, in substance, that at the time the same were given, appellant was a foreign corporation, and was engaged in and carrying on the 'regular business of dealing in lumber at Forman, and other points in the Territory of Dakota, (now State of North Dakota;) and that said Note and Mortgage were given and received at said Forman, and in the regular course of appellant's business; and then proceeds to set forth certain facts to show that at the time of said transactions appellant had not complied with the statutory provisions then in force in the Territory of Dakota, and now in force in this state, relative to the transaction of business by foreign corporations. There was a demurrer to the answer, which the trial court overruled, and this ruling is the only question involved in this appeal. The statutes relied upon constitute § § 3190, 3192 of our Comp. Laws, and read as follows: "No corporation created or organized under the laws of any other state or territory shall transact any business within

this territory, or acquire, hold, and dispose property, real, personal, or mixed, within this territory, until such corporation shall have filed in the office of the secretary of the territory a duly authenticated copy of its charter or articles of incorporation, and shall' have complied with the provisions of this article: provided, that the provisions of this act shall not apply to corporations or associations created for religious or charitable purposes only." Section 3192: "Such corporation shall appoint an agent, who shall reside at some accessible point in this territory, in the county where the principal business of said corporation shall be carried on, duly authorized to accept service of process, and upon whom service of process may be made in any action in which said corporation may be a party; and service upon such agent shall be taken and held as due service upon such corporation. A duly authenticated copy of the appointment or commission of such agent shall be filed and recorded in the offices of the secretary of the territory and register of deeds of the county where said agent resides, and a certified copy thereof by the secretary or register of deeds shall be conclusive evidence of the appointment and authority of such agent." Three errors are assigned and argued: *First,* the answer does not state facts sufficient to show noncompliance with said statutes: *Second,* said statutes do not make contracts made in violation of the provisions thereof void or unenforceable as between the parties thereto, or in any way affect their rights or remedies. *Third,* said statutes, as applied to the case at bar, are unconstitutional, in that they interfere with interstate commerce.

As to the first point, without setting forth the allegations in detail, we have to say that a careful consideration of them leaves no doubt in our minds that the allegations fairly show noncompliance with the statute, and the trial court committed no error in so holding.

The second point is difficult, and involved in much confusion. While these provisions have been upon our statute books for years, appearing as § § 567, 569 in the Civil Code of 1877, yet they are now, for the first time, to be passed upon by the court of

last resort in this jurisdiction. On three different occasions (*Machine Co.* v. *Moore*, 8 N. W. Rep. 131, 2 Dak. 280; *Manufacturing Co.* v. *Foster*, (Dak.) 30 N. W. Rep. 166; and *Lumber Co.* v. *Keefe*, 41 N. W. Rep. 743, 6 Dak. 160) an effort was made to raise the point before the Supreme Court of Dakota Territory, but no ruling was ever made. In declaring the effect of statutes prohibitory in form, courts have but one object in view,—the real purpose of the statute; the real intention of the legislature in its enactment. It may be stated as a rule at common law that if a statute forbids an act to be done—provides a penalty for doing it—any contract to do the forbidden act is void, whether the statute expressly so declares or not. *Machine Co.* v. *Caldwell*, 54 Ind. 276. And when the purpose of the enactment is the absolute prohibition of a certain act, then the performance thereof is invalid, whether the prohibited act be *malum in se* or simply *malum prohibitum*. *Holt* v. *Green*, 73 Pa. St. 198; *Pratt* v. *Short*, 79 N. Y. 437. But in determining the purpose of the enactment, courts consider the nature of the forbidden act, for the very obvious reason that when such act is immoral or criminal in its nature, or dangerous to life, health or property, the presumption must prevail that legislative wisdom intended to stamp it out; while if the act be innocent in itself and in its consequences, no such presumption necessarily arises. Among the former may be mentioned gaming contracts, contracts for the sale of intoxicating liquors, where such sales are made criminal, contracts for the sale of diseased food, champertous contracts, etc. A large number of the cases arose under statutes of this kind, and are not authority for the case at bar. To properly construe statutes of the nature of the one here involved, it is necessary to first consider the powers and privileges of foreign corporations in the absence of all statutory regulations. While it is undoubtedly true, as stated by Chief Justice Taney in *Bank* v. *Earle*, 13 Pct. 588, that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created," and that "every power, however, of the description of which we are speaking, which a corporation

exercises in another state, depends for its validity upon the laws of the sovereignty in which it is exercised, and a corporation can make no valid contract without their sanction, express or implied," yet this implied sanction is always presumed to exist until the contrary appears. In the same case it is said: "We think it well settled that by the law of comity among nations a corporation created by one sovereignty is permitted to make contracts in another, and to sue in its courts, and that the same law of comity prevails among the several sovereignties of this Union." In *Elston* v. *Piggott*, 94 Ind. 17, it is said: "This principle of the comity of nations is a part of the common law, and is by long settled rules, as well as by positive statute, ingrafted on our law." •And to same effect are *Christian Union* v. *Young*, 101 U. S. 352; *Thompson* v. *Waters*, 25 Mich. 214; *Lumber Co.* v. *Thomas*, 33 W. Va. 566, 11 S. E. Rep. 37; Ang. & A. Corp. § § 372, 376. Of course, this comity only extends to the exercise of such powers as are expressly granted in the charter conferred by the creating sovereignty. It is true, also, that one sovereignty has the power to exclude from its territory any corporation created by another sovereignty; but this must be done by express statute, or by the settled policy of the state, as evinced by the decisions of its courts of last resort. And this includes the lesser right to prescribe terms with which such foreign corporation must comply. We have no statute excluding foreign corporations, except as heretofore quoted, nor has it ever been the policy of this state to exclude foreign corporate capital and business enterprise. Appellant, unless forbidden by the statute quoted, had the power to transact business and enter into contracts in the Territory of Dakota. The nature of its contracts contravened no policy of that territory. The contract was innocent in itself and in its consequences. Under these facts, was it the legislative purpose, by the enactment of § § 3190, 3192, Comp. Laws, to declare contracts of this character, entered into before the foreign corporation had complied with the provisions of said sections, unenforceable and void? Similar statutes upon this and other subjects are

found in all the states of this Union, and in their construction so much is left to judicial determination that uniformity in the decisions would hardly be expected. The statutes, too, present great variety. Some, like ours, are prohibitory in form, with no penalty attached, and silent as to the consequences of noncompliance. Others, while not prohibitory in form, attach a penalty for doing or failing to do certain specified things. Others have both the prohibitory form and the penalty. Some declare contracts made without compliance with their provisions void and unenforceable or unlawful. Others specify various consequences that shall follow noncompliance. One class of cases, where the statutes are prohibitory, with penalty attached, holds that contracts made without compliance with the terms of the statute are nevertheless valid and enforceable, on the ground that by annexing a penalty the legislature manifested its purpose that the penalty should be exclusive of all other consequences of noncompliance. Of this class are *Lumber Co.* v. *Thomas*, 33 W. Va. 566, 11 S. E. Rep. 37; *Insurance Co.* v. *Walsh*, 18 Mo. 229; *Insurance Co.* v. *McMillen*, 24 Ohio St. 67; *Harris* v. *Runnels*, 12 How. 79. Another class of cases, under similar statutes, holds that the annexation of a penalty renders all acts which subject the party to the penalty unlawful, and hence unenforceable, on the universally accepted proposition that no cause of action can be based upon an unlawful transaction. See *Buxton* v. *Hamblen* 32 Me. 448; *Miller* v. *Post*, 1 Allen, 434; *Wheeler* v. *Russell*, 17 Mass. 257; *Johnson* v. *Hulings*, 103 Pa. St. 498; *Holt* v. *Green*, 73 Pa. St. 198; *Dudley* v. *Collier*, (Ala.) 6 S. Rep. 304; *Insurance Co.* v. *Harvey*, 11 Wis. 412; *Elkins* v. *Parkhurst*, 17 Vt. 105. But there is still another class of cases, where the statute annexes a penalty, that holds that contracts made without compliance with the statute are nevertheless valid, on the ground that the purpose of the statute was not to prohibit business, but to accomplish some collateral object. In this class we cite *Larned* v. *Andrews*, 106 Mass. 435; *Aiken* v. *Blaisdell*, 41 Vt. 655; *DeMers* v. *Daniels*, 39 Minn. 158, 39 N. W. Rep. 98; *Strong* v. *Darling*, 9 Ohio, 201;

*Pangborn* v. *Westlake*, 36 Iowa, 546; *Rahter* v. *Bank*, 92 Pa. St. 393. It has been held under statutes, prohibitory in form, but without penalty, and silent as to consequences, such as ours heretofore quoted, that all contracts entered into without compliance with the terms of the statute were absolutely void. These cases are based largely upon the thought that, inasmuch as there is no penalty or forfeiture provided in the statute for a, disregard of its terms, there remains no method of its enforcement, other than to declare all contracts made in disregard of the statutory provisions unenforceable. *Bank* v. *Page*, 6 Or. 431; *Hacheny* v. *Leary*, 12 Or. 40, 7 Pac. Rep. 329; *in re* Comstock, 3 Sawy. 218; *Hoffman* v. *Banks*, 41 Ind. 1; *Insurance Co.* v. *Harrah*, 47 Ind. 236; *Insurance Co.* v. *Thomas*, 46 Ind. 44; *Assurance Co.* v. *Rosenthal*, 55 Ill. 85.

Other cases arising, like those last noticed, under statutes prohibitory in form, but without penalty or expressed consequences, have held that contracts entered into without compliance with the terms of the statute were valid, enforceable contracts as between the parties, and that one who had received and retained the benefits of such a contract could not raise the question of noncompliance. *Bank* v. *Matthews*, 98 U. S. 621, arose under that provision in the national banking law permitting national banks to purchase, hold, and convey real estate for certain specified purposes, and no other. The bank had received real estate security contrary to the terms of the act, and it was sought to declare such security void in the hands of the bank. The court said the prohibition was clearly implied, and as effectual as if it were expressed; but, on full consideration and a review of the authorities, it was held that the purpose of the statute was not to render such contracts void and unenforceable. The court used this language: "The intent, not the letter, of the statute constitutes the law. A court of equity is always reluctant in the last degree to make a decree that will effect a forfeiture. The bank parted with its money in good faith. Its garments are unspotted. Under these circumstances, the defense of *ultra vires*, if it can be

N. D. R.—10.

made, does not address itself favorably to the mind of the chancellor." And as a conclusion the court said: "The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other contemplated by congress. That has been always the punishment prescribed for wantom violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot, directly or indirectly, usurp this function of the government." The court also quoted with approval the following language from Sedg. St. Const. 73: "Where it is a simple question of authority to contract, arising either on a question of regularity of organization or power conferred by charter, a party who has had the benefit of the agreement cannot be permitted, in an action founded upon it, to question its validity." *Whitney* v. *Wyman*, 101 U. S. 392, is equally instructive. It arose under a Michigan statute, which prohibited corporations from transacting business until their articles of incorporation were filed in the proper office, but attached no penalty. Certain parties purporting to act for a certain corporation, but before articles of incorporation were filed, ordered certain machinery of plaintiff, which was forwarded and charged to the parties ordering, and not to the corporation. The parties refused to pay, and plaintiff brought action against them, claiming that the corporation for which they purported to act could not transact business by reason of the statutory restriction. A unanimous court, speaking by Justice Swayne, said: "The restriction imposed by the statute is a simple inhibition. It did not declare what was done should be void, nor was any penalty prescribed. No one but the state could object. The contract is valid as to plaintiff, and he has no right to raise the question of its invalidity;" citing the case of *Bank* v. *Matthews*, and showing that the court considered the principle involved to be the same. In *Grant* v. *Coal Co.*, 80 Pa. St. 218, it is said: "Having dealt with the defendant in error as a *de facto* corporation, there is little merit in the defense now taken, that they were not duly incorporated, and had no right to sue for coal which it is admitted they

delivered.    Nor is there any question raised upon the record as
to the right of this company as a foreign corporation to hold real
estate or even mining leases in this state.   If the commonwealth
has any interest in such inquiry, it can be raised by her proper
officer.    It is a matter with which the plaintiff in error has no
concern."    Since the decision of this case in the trial court, the
Supreme Court of South Dakota, in an elaborate and instructive
opinion by Bennett, J., has passed upon the identical statute here
in question, which South Dakota, like North Dakota, received at
the hands of the late Territory of Dakota.    The conclusion
reached by that court, after a full review of the authorities, is thus
stated:  "Aided by the light of these able decisions, endeavored
to be reviewed upon both sides of the question raised in the case
at bar, we have come to the conclusion that the constitutional
provision and legislative enactment in our state, as quoted above,
was not designed or intended as a prohibition upon foreign cor-
porations to contract in this state, to the extent to declare such
contracts void, but were merely intended to furnish the means by
which our citizens could procure personal judgments against
foreign corporations who were their debtors.  And while the statute
did in terms prohibit the transaction of business until its provi-
sions are complied with, yet whatever objection there might be
made to a foreign corporation for noncompliance, it being a
statute regulating a public policy, this objection could not be
urged collaterally by a private person, but it must be done by a
direct proceeding instituted by the state."    *Wright* v. *Lee*, (S. D.)
51 N. W. Rep. 706.   See also, Mor. Priv. Corp. § 665; *Fritts* v.
*Palmer*, 132 U. S. 282, 10 Sup. Ct. Rep. 93; *Fortier* v. *Bank*, 112 U.
S. 439, 5 Sup. Ct. Rep. 234; *Reynolds* v. *Bank*, 112 U. S. 405, 5 Sup.
Ct. Rep. 213; *Chase's Patent Elevator Co.* v. *Boston Tow Boat Co.*,
152 Mass. 428, 28 N. E. Rep. 300; *Merrick* v. *Engine & Governor
Co.*, 101 Mass. 384.

The cases which we have cited from the various classes demon-
strate, perhaps, the lack of uniformity with more certainty than
they point to the correct rule of construction.   Yet when studied,

the cases are all found seeking one common object,—the legislative purpose. "The intent of 'the law maker is the law;" the embarrassment is in declaring that intent. This intention may be declared in the act, or it may be inferred from its provisions in connection with the subject matter and circumstances. *Howell* v. *Stewart*, 54 Mo. 400; *Machine Co.* v. *Caldwell*, 54 Ind. 279. In the statute under discussion the legislature specified reasonable terms upon which a foreign corporation could launch its business over the entire state, unquestioned by private interests or sovereign power. Whatever may have been the primary purpose of the legislature, it certainly was not to exclude foreign corporations from the state. Nor is it reasonable to presume that it was the legislative intent to declare all contracts made by foreign corporations without compliance with the statute absolutely void. It were a reflection upon legislative wisdom to presume that consequences so unusally harsh and oppressive were expected to flow from the use of language so mild and uncertain. Our statute is a simple inhibition. It declares no penalty. It does not declare the transaction of business unlawful or contracts void. We may well use the language of Justice Swayne in *Bank* v. *Matthews, supra*: "The statute does not declare such a security void. It is silent upon the subject. If congress so meant, it would have been easy to say so; and it is hardly to be believed that this would not have been done, instead of leaving the question to be settled by the uncertain result of legislative and judicial decision." The statute by its terms places foreign corporations upon an equality with domestic corporations in the matter of the publicity of the purposes of their creation and their powers, and in the matter of convenience and certainty with which process may be served upon them. It is not possible to read the statute without perceiving this to have been the primary purpose of its enactment. These objects are, or may be, highly necessary for the protection and convenience of our citizens dealing with such corporations. The legislature, having specified the duties of the foreign corporation, provided, in Ch. 26 of the Civil Code, the means for their enforcement,

and made it the duty of every prosecuting attorney to see that such conditions were fulfilled, or the corporation barred from the exercise of any corporate franchise within this state. This we believe to have been the remedy, and the only remedy, in the mind of the legislature. These respondents dealt with appellant as a corporation. They received and retained its property, and executed their obligation to pay for the same. The corporation has fulfilled its contract, and now respondents, without offering to return the consideration for their note, ask that they be released from the performance of their contract, for no reason other than the failure of appellant to perform a duty that it owed to the state at large, but the nonperformance of which in no manner prejudiced respondents. We are unwilling to ingraft upon a silent statute a consequence so inequitable. Upon both principle and authority, respondents are precluded from raising the question of noncompliance upon the part of appellant with the provisions of said § § 3190, 3192, Comp. Laws. The facts alleged in the answer did not invalidate the contract, and the demurrer should have been sustained upon that ground.

It will not be necessary nor proper, in view of what we have said upon the second assignment of error, for us to discuss the constitutional question raised by the third assignment.

The District Court is ordered to vacate its order heretofore entered, and enter an order sustaining the demurrer.

Reversed. All concur.