MODEL HEATING COMPANY, plaintiff below, plaintiff in error, *vs.* THOMAS MAGARITY, defendant below, defendant in error.

1. PLEADING—PLEA IN ABATEMENT—AUTHORITY OF FOREIGN CORPORATION TO SUE.

The question whether a contract made within the state by an agent of a foreign corporation, which has not complied with the laws of the state, can be enforced, is properly raised by a plea in abatement.

2. CORPORATIONS—FOREIGN CORPORATIONS—CONTRACTS—VALIDITY.

Under *Const.* 1897, *art.* 9, § 5, providing that no foreign corporation shall do any business in the state, through or by branch offices, agents, or representatives located in the state, without having an authorized agent or agents on whom process may be served, and Act March 23rd, 1903 (22 *Del. Laws*, c. 395), making it unlawful for any corporation created by the laws of any other state or by the laws of the United States to do business in the state, through or by branch offices, agents, or representatives located in the state, until it shall have filed a certified copy of its charter, and the name of its authorized agent in the state, with a sworn statement of its assets and liabilities, and paid fifty dollars to the Secretary of State for the use of the state, and imposing penalties on the corporation and its agents violating the provision, a contract of sale by a foreign corporation, which has not complied with the provisions, through an agent located in the state, can nevertheless be enforced against the purchaser, who retains the benefits of the contract.

3. CONSTITUTIONAL LAW—CONSTRUCTION AND OPERATION—SELF-EXECUTING PROVISIONS.

*Const.* 1897, *art.* 9, § 5, providing that no foreign corporations shall do any business in the state through or by branch offices, agents, or representatives located in the state, without having an authorized agent or agents on whom legal process may be served, is not effective, independent of statutes passed, pursuant thereto, to deprive a foreign corporation, which has not complied therewith, of the right to enforce a contract against a purchaser who retains the benefits thereof; such section not being self-executing.

4. CORPORATIONS—FOREIGN CORPORATION—COMITY.

By comity a corporation created by one sovereignty is permitted to make contracts in another and sue on its contracts.

5. CORPORATIONS—FOREIGN CORPORATIONS—POWER TO REGULATE.

Each sovereignty may, by express statute or settled policy, exclude corporations created by another sovereignty, or prescribe terms with which they must comply, except such as are engaged in interestate commerce, or otherwise protected by provisions of the United States Constitution and statutes.

(*October* 16, 1911.)

CURTIS, Chancellor, and Associate Judges CONRAD and WOOLLEY, sitting.

*Christopher L. Ward* and *John P. Nields* for plaintiff in error.

*Artemas Smith* and *Alexander M. Daly* for defendant in error.

Supreme Court, June Term, 1911.

WRIT OF ERROR (No. 3, January Term, 1911) to Superior Court for New Castle County. Action by the Model Heating Company against Thomas Magarity (No. 43, June Term, 1908). Judgment for defendant (1 *Boyce* 240, 75 *Atl.* 614), and plaintiff brings error. Reversed and demurrer to special plea in abatement sustained.

CURTIS, Ch., delivering the opinion of the court:

The writ of error is taken by the plaintiff below to a judgment of the Superior Court overruling a demurrer of the plaintiff to a special plea in abatement to the declaration. The action was in assumpsit to recover for goods sold and delivered. By a special plea the defendant alleged that the plaintiff was a corporation under the laws of Pennsylvania; that at the time the contract was made the corporation was doing business in Delaware through and by branch offices, agents, or representatives located here, without having complied with the provisions of law, constitutional and statutory, hereinafter mentioned respecting foreign corporations, and that the contract was made by the agent of the plaintiff located in this state.

It is provided by *Section* 5 of *Article* 9 of the *Constitution*, adopted June 4th, 1897, as follows:

"No foreign corporation shall do any business in this state through or by branch offices, agents or representatives located in this state, without having an authorized agent or agents in the state upon whom legal process may be served."

At the time the contract was made and the suit brought there was and still is a statute, approved March 23rd, 1903 (22 *Del. Laws*, c. 395, *p.* 824), referred to in the declaration, which contained the following provision:

"Section 1. That it shall not be lawful for any corporation created by the laws of any other state or by the laws of the United States, to do any business in this state through or by branch offices, agents, or representatives located in this state, until it shall have filed in the office of Secretary of State of this state a certified copy of its charter and the name or names of its authorized agent or agents in this state, together with a sworn statement of the assets and liabilities of such company or corporation, and paid to the Secretary of State, for the use of the state, fifty dollars ($50); and the certificate of the Secretary of State under his seal of office, of the filing of such charter, shall be delivered to such agent or agents upon the payment to said Secretary of State of the usual fees for making certified copies; the said certificate shall be *prima facie* evidence of such company's right to do business in this state."

By *section* 2 it is made the duty of the Secretary of State, to deliver to the prothonotary of each county a certificate of the name of the agent, and by *section* 3 it is made the duty of each prothonotary to record the certificate.   By *section* 4 it is enacted that service of process may be made on such agent and that it shall be as effectual as if served on the corporation.   It is enacted in *section* 6 that any corporation doing business here without having first complied shall be guilty of a misdemeanor and be subject to a fine for each and every offense, and also that any agent of such foreign corporation who shall transact any business here for any foreign corporation, before it has complied, shall be guilty of a misdemeanor and fined for each and every offense.

At the time of the adoption of the present Constitution on June 4th, 1897, there were in force two statutes relating to this same subject-matter.   These two statutes taken together contain in substance the same requirements of foreign corporations as are contained in the act of 1903, above referred to, and impose fines for violation thereof, and make service on the agent good, the only substantial difference being the requirement that the certificate naming an agent be filed in each county by the corporation, and not in the office of the Secretary of State, to be by him filed with the prothonotary of each county.   These statutes are *Chapter* 703, *Vol.* 19, *Laws of Delaware, p.* 900, passed April 28th, 1893, and *Chapter* 513, *Vol.* 20, *Laws of Delaware, p.* 544, passed May 12th, 1897.

It appears, therefore, that at the time of the adoption of the Constitution there were in force laws of substantially the same import as now exist respecting foreign corporations doing business here.   In substance this legislation forbids foreign corporations to do business here by branch offices, or agents located here, without having filed a certificate naming an authorized agent in the state upon whom process may be served, and also a copy of its charter and a sworn statement of its assets and liabilities, and imposes penalties for each and every offense by fine upon both the corporation and the agent, violating the laws, and makes service of process on the designated agent equivalent to service upon the corporation.

Opinion.

[1]  In this case, then, is presented in this court for the first time the question whether by such legislation a contract made here by an agent in this state of a foreign corporation which had not complied with the laws of Delaware, whereby goods were sold and delivered to a citizen of Delaware, can be enforced here so that the vendor may collect payment for the property so parted with by it and received and retained by the vendee.  As rightly held in the case of *Sewing Machine Co. v. Frame*, 2 *Penn.* 430, 48 *Atl.* 188, the question is properly raised by a plea in abatement, and the vendee can take advantage of the noncompliance of the vendor in this way only, if at all.

[2]  In its opinion, reported in 1 *Boyce* 240, and 75 *Atl.* 614, the court below stated that it felt bound by the decision of the Superior Court, rendered in the case of *Beeber v. Walton*, 7 *Houst.* 471, 32 *Atl.* 777, and expressly based its conclusion thereon; but as herein indicated this court does not consider that the principles applicable to that case apply to the case now before it, and hold that other and different rules are applicable.  With the view of following any well established, pertinent and controlling doctrine, or even policy, of the law of this state, as evidenced by the Constitution, statutes or decisions, a careful examination has been made of the laws and reported decisions, and as a conclusion it is found that there is no such pertinent doctrine or policy established here, and, therefore, that this court must reach conclusions independent of any decision of the courts of Delaware.  The case of *Gregory v. Bailey*, 4 *Harr.* 256, seems to be pertinent, and, if so, as a decision of the Court of Errors and Appeals, is controlling, in its influence at least.  Without careful reading it seems to hold "that a seller of lottery tickets, having no license to sell them, may recover the price of tickets sold, though the sale be prohibited by statute." But in reality the court did not so hold, and it was not necessary to do so, because there the sale was not of lottery tickets in retail, but by wholesale and as part of a sale of the whole lottery scheme including tickets, and the court held that the statute regulating the sale of lottery tickets did not apply.  In *Cook v. Pierce*, 2 *Houst.* 499, a usurious contract was declared unenforceable because prohibited and therefore invalid and void.  By statute the

rate of interest for the use of money lent was fixed, and money
loaned at a greater rate of interest was forfeited to any one who
would sue for it, though the statute did not expressly render the
contract void or unenforceable.   The court considered that both
by the words and policy of the law a contract for a greater rate of
interest was a forbidden one, and being made unlawful was void.
But obviously there is a difference in the effect of statutes which
expressly, or by necessary implication, and as part of a commercial
policy of the state, made a particular kind of contract unlawful
and one which prohibits under penalty a foreign corporation from
carrying on business generally, without reference to a particular
kind of business, until one carrying on business maintains an agent
on whom process against it may be served.   In *Cook v. Pierce*, a
well-established principle was applied correctly.   Prohibited con-
tracts are unenforceable because rendered void by the prohibi-
tion to make them, whether the statute so declares or not and
whether the act be *malum in se* or *malum prohibitum*.   A legisla-
tive intent to make the contracts unenforceable is evident in such
cases.   A usurious contract is a typical instance.   So contracts
for the sale of intoxicating liquors are unenforceable when the sale
of such article is prohibited.   But this principle is not applicable
where there is no prohibition to carry on the particular business
in which the plaintiff is engaged, in the course of which the con-
tract in question was made.

In *Johnson v. Mason, etc., Lodge*, 106 *Ky.* 838, 51 *S. W.* 620,
the court distinguished between statutes regulating corporations
in general and those intended to protect the public against sellers
of worthless fertilizers, and those which prohibited the sale of
intoxicating liquors without license, and also statutes to regulate
insurance corporations.   Concerning such prohibited contracts
the court said:

"As the vice was in the contract itself they [the statutes] are
therefore distinguishable in this respect from this case, which only
involves the idea of disability to sue."

The principle applied in *Reeder v. Jones* (1902) 6 *Penn.* 66,
65 *Atl.* 571, is equally well established.   A person carrying on the
business of real estate broker without having a license to carry

on that particular business was not allowed to recover commissions for making a sale of real estate.   The purpose of this statute is to obtain revenue, and it is made unlawful for all unlicensed persons to act as real estate brokers, and so, necessarily, their contracts for acting as such are unenforceable.   But that is not applicable to the legislation under consideration here, the primary object of which is not to exclude foreign corporations, or to license them to carry on particular kinds of business, but to bring them within the reach of the process of the courts of Delaware.

In almost all (if not all) the states, including Delaware, corporations issuing policies of insurance, assurance and suretyship are regulated by statute.   Here the statutes respecting such corporations have as their primary object, whether it be so expressed or not, to protect people of the state from being injured or defrauded by corporations, fraudulently or dishonestly conceived or managed, or financially unsound.   With this in view they require not only of such foreign corporations to put on record here evidence of their authority to transact such business, of their ability to carry out their contracts, and of their financial stability.   To insure this they require that the Insurance Commissioner shall examine their affairs annually and give certificates to those qualified.   All others are prohibited from doing business of those kinds here.   Incidentally, it is required that foreign corporations maintain agencies upon whom process can be served validly.   Licenses are subject to revocation for cause and the power of the state officer over such kinds of corporations is constant and continuous. It is a fair construction of such a statute considering its primary object, to hold that a suit to enforce payment of a note given here for a premium on a policy issued by a foreign corporation not qualified to do such business here, cannot be maintained here by the corporation or its receiver.   Such was *Beeber v. Walton* (1877) 7 *Houst.* 471, 32 *Atl.* 777, which by its express declaration controlled the court below.   The foreign insurance company sued on a note given for premiums on a policy, and at the time the note was given the corporation had not complied with the laws of Delaware, but had done so before the suit was brought.   It was held in *Beeber v. Walton,* quite entirely on the authority of *Cook v. Pierce,*

*supra*, that the contract was void and unenforceable, though not so declared by the statute. The court considered that the object of the statute was to protect the citizens of the state from spurious, insolvent and dishonest insurance companies, and so held that the contracts made by such here in the course of that business to be unenforceable here. It is obvious that such is not the object of any legislation in Delaware under consideration, and therefore, the same result should not follow.

In *Franklin Insurance Co. v. Louisville, etc., Co.*, 9 *Bush* (*Ky.*) 590, the Kentucky court took the same position as the court in *Beeber v. Walton*, respecting similar statutes regulating foreign insurance corporations, and considered that by such regulation the Legislature intended the act to be not only a means to raise revenue but to prohibit the particular business itself so far as carried on by those unqualified to do so. *Barbor v. Boehm*, 21 *Neb.* 450, 32 *N. W.* 221, was a similar case.

From this examination it is evident that the courts of Delaware have not heretofore adopted a policy of judicial construction of statutes like those now under consideration which would be applicable to the latter. Different principles are applicable where the primary object of legislation is not to regulate particular kinds of contracts or license particular kinds of business, or to raise revenue, but the primary object is to secure to the state and the people thereof a way to serve process on corporations organized in other states, when they come here to do business by branch offices and agents located here. Such is the primary object and purpose of the laws of Delaware, constitutional and statutory, under present consideration. The revenue feature is distinctly a subsidiary one, unimportant to the discussion. There is no continuous supervision of the financial standing of the foreign corporations, and no discretion to refuse to give certificates of compliance when the simple requirements of the statute are complied with, whether the initial statement of its assets and liabilities be satisfactory to the Secretary of State, or not. Contracts made by noncomplying corporations, or by noncomplying agents, are not declared to be either void or unenforceable, generally, or until compliance. To insure the presence in Delaware of some

one on whom valid service of process can be served in suits against foreign corporations coming here to transact business by branch offices or agents located here, the state has prohibited foreign corporations from doing business here through or by branch offices, agents or representatives located here, without having such agent authorized to receive such service and makes valid a service of process on such agent, and to enforce it imposes, not only on the corporation, but also on the individual representing it, a fine in case a corporation shall so do business without having so complied.

Are contracts made with people of this state by a foreign corporation, which has not so complied, either invalid in Delaware, or unenforceable here?

When the statute is silent on the subject of the enforceability of contracts made by unqualified foreign corporations, the whole statute should be considered and its purpose ascertained, in determining the unexpressed legislative intent respecting the enforceability of such contracts. This is not only reasonable, but has judicial support. *Harris v. Runnels*, 12 *How.* 79, 13 *L. Ed.* 901; *Washburn, etc., Co. v. Bartlett*, 3 *N. D.* 138. 54 *N. W.* 544; *Bank v. Matthews*, 98 *U. S.* 621, 25 *L. Ed.* 188; *Dunlop v. Mercer*, 156 *Fed.* 545, 86 *C. C. A.* 435. This is the established rule of the federal courts respecting statutes in general, where the act prohibited under penalties is not *malum in se*. In the case of *In re T. H. Bunch Co. (D. C.)* 180 *Fed.* 519, there is a large collection of authorities to that effect.

In the several states there is a variety of legislation, constitutional and statutory, concerning foreign corporations doing business by branch offices or resident agents. In some (a) there is simply a prohibition; in others (b) a prohibition and penalty; in others (c) in addition the contracts made by such agents are declared to be void for noncompliance; (d) in others, they are declared unenforceable; (e) in others, they are unenforceable until compliance; and various rules have been adopted respecting them in the several jurisdictions. But only those in class (b) are analogous to the Delaware law, and the decision of the courts

of states with other provisions are necessarily not useful in reaching a conclusion in the case before this court.

Where there is solely a prohibition without a penalty, it may be sound reasoning to hold that the prohibition was intended to effect the desired protection by making unenforceable contracts made by corporations which had not complied, for in that way only could the prohibition be enforced. Some courts have so held, though it is not uniformly so held. *Bank v. Page*, 6 *Or.* 431; *Assurance Co. v. Rosenthal*, 55 *Ill.* 85, 8 *Am. Rep.* 626. *Contra*, *Washburn, etc., Co. v. Bartlett*, 3 *N. D.* 138, 54 *N. W.* 544.

[3] It is claimed that this is the effect of the Constitution of Delaware. If it solely prohibited foreign corporations from doing business in Delaware, and the above principle be considered sound, it might be applied in this case. But the Constitution is much narrower in its prohibition, in that it forbids foreign corporations to do business in Delaware, not generally, but by branch offices or agents located here, without an authorized agent here upon whom process may be served. Its clear purpose is to make all such corporations amenable to the process of the courts here. Is it effective to do so in itself, and without legislation?

Probably it is not, because not self-executing, in that it does not provide either the method of establishing and authorizing agencies, or make service of process on them valid, but leaves it to the Legislature to supply these deficiencies. Until these features are supplied, it is not capable of being obeyed, and so its prohibition is ineffective. This was strongly argued by the counsel for the plaintiff in error, and in support he cited *Cooley on Const. Lim.* 98, 99; 9 *Cyc.* 752, 753, 759; *Eau Claire v. Benson*, 105 *Wis.* 624, 82 *N. W.* 604; *Davis v. Burke*, 179 *U. S.* 399; 21 *Sup. Ct.* 210, 45 *L. Ed.* 249, and *Hyatt v. Allen*, 54 *Cal.* 353, on the general proposition that constitutional provisions which require subsequent legislation to enforce them are not self-executing, and in addition, *St. Louis, etc., Ry. Co. v. Fire Ass'n*, 60 *Ark.* 325, 30 *S. W.* 350, 28 *L. R. A.* 83. In the last-cited case a provision of the Constitution of Arkansas, similar to that in Delaware, was held not to be self-executing or enforceable.

"The appellant contends that the evidence failed to show

that the Commerical Company complied with *section* 11, *art.* 12,
of the *Constitution*. This section declares that no 'foreign corpora-
tion shall do business in this state, except while it maintains there-
in one or more known places of business and an authorized agent
or agents in the same upon whom process may be served.' It is
not self-executing. It does not provide how the agent shall be
designated, or how the place of business shall be made known.
The Commercial Company had no right to say upon what agent
process may be served. The Legislature alone has the right.
Until it exercised it, there was no penalty for the violation of the
Constitution in that respect." *Armor, etc., Co. v. Vinegar, etc.,
Co.,* 149 *Ala.* 205, 42 *South.* 866.

It may be that the constitutional provision in Delaware is
only a limitation on the powers of the Legislature to authorize
foreign corporations to do business here by branch offices, etc.,
without requiring such corporations, as a condition of the privi-
lege, to maintain agents here upon whom process shall be served
in a manner to be designated by the Legislature, the method of
registration of such agents and other necessary administrative
details being left to the Legislature and subject to change by it.

As already shown, the same legsilation was in force in Dela-
ware at the time of and since the adoption of the Constitution in
1897. Clearly the provision of the Constitution, and the statutes
of 1893 and 1897, in force when the Constitution was adopted,
are in *para materia*, in that they relate to the same subject-matter,
viz., a prohibition of foreign corporations from doing business
here by branch offices, etc., without having an agent here on
whom process could be served. Not being repugnant or inconsis-
tent, they are to be construed together. The conclusion is inevit-
able that the members of the Constitutional Convention of 1897,
whatever they may have said in the debates there (and we are not
sure that we have examined all that was there said on the sub-
ject) must, in formulating the provision of the Constitution in
question, have had regard to the existing statutes, which would
in fact supplement and make effective the contemplated consti-
tutional provision, probably otherwise ineffective; for these then
existing statutes provided a method of establishing agencies and

of serving process on them with the same effect as though service had been made on the corporation itself. In other words, it was considered that the Constitution, whether otherwise ineffective or not, would certainly be made operative by the existing statutes on the same subject, which established a method of registering agencies, and a legal method for an effective service of process on them. This court is not daunted to so hold, because it may be argued that it would logically result that the interpretation and effectiveness of the Constitution would vary according as the Legislature varied the statutes on the same subject-matter. There fore, whether or not the constitutional provision be regarded as inoperative, except as a limitation on the power of the General Assembly, or whether or not it be considered with the acts of 1893, 1897 and 1903, relating to the same matter, the result is the same, for the statute of 1903, in force when the contract in question was made, and now still in force, is in harmony with the Constitution and contains all that it contains on the subject and more. Hence in deciding this case, regard may be given only to the present existing statute, that of 1903.

[4, 5] By comity a corporation created by one sovereignty is permitted to make contracts in another, and sue on its contracts. *Bank of Augusta v. Earle*, 16 *Pet.* 588, 10 *L. Ed.* 274. Each sovereignty by express statute or settled policy of the state may exclude corporations created by another sovereignty, or prescribe terms with which such foreign corporations must comply, except such as are engaged in interstate commerce and otherwise protected by valid provisions of the Constitution and statutes of the United States. The primary purpose of the legislation in Delaware being so obvious, it certainly was not intended to exclude foreign corporations from the state. It does not in terms render invalid the contracts made here by noncomplying foreign corporations. As has repeatedly been said elsewhere, if such consequences were intended it was very easy for the Legislature to have said so. Without undertaking to review all the many cases which have been cited or decided in construing the variously worded statutes of other states on the same subject, it is here asserted that the better reason, the wiser and fairer policy and the greater weight,

lie with those decisions of other courts which hold, that where as here, there is a prohibition with a penalty, with no express or implied declaration respecting the validity or enforceability of contracts made here by unqualified foreign corporations, the contracts made here by corporations created elsewhere and doing business here by branch offices or agents located here without complying with the laws of Delaware as to registration of agents, etc., are enforceable in the courts of Delaware on the ground that the purpose of the statute was not to prohibit business, but accomplish a collateral object, viz., to bring such corporations within the reach of process of the courts here, and to effect this the penalty provided is deemed to be exclusive of all other consequences, and, therefore, the further penalty of forfeiture of rights under the contract otherwise valid and enforceable, will not be added by the court when suit is brought on the contract. The courts of the following states where the laws are substantially like those of Delaware, have so held:

Colorado: *Utley v. Mining Co.*, 4 *Colo.* 369; *Kindel v. Beck, etc., Co.*, 19 *Colo.* 310, 35 *Pac.* 538, 24 *L. R. A.* 311; *Rockford Ins. Co. v. Rogers*, 9 *Colo. App.* 121, 47 *Pac.* 848; *Helvetia, etc., Ins. Co., v. Allis, etc., Co.*, 11 *Colo. App.* 264, 53 *Pac.* 424. Kentucky: *Johnson v. Mason Lodge*, 106 *Ky.* 838, 51 *S. W.* 620; *Hallam v. Ashford*, 70 *S. W.* 197, 24 *Ky. Law Rep.* 870. South Carolina: *Galletley v. Strickland*, 74 *S. C.* 394, 54 *S. E.* 576. Washington: *Dearborn, etc., Co. v. Augustine*, 5 *Wash.* 67, 31 *Pac.* 327; *Edison v. Canadian, etc., Co.*, 8 *Wash.* 370, 36 *Pac.* 260, 24 *L. R. A.* 315, 40 *Am. St. Rep.* 910; *La France, etc., Co. v. Mt. Vernon*, 9 *Wash.* 144, 37 *Pac.* 287, 38 *Pac.* 80, 43 *Am. St. Rep.* 827; *Horrell v. Homebuilders' Ass'n*, 40 *Wash.* 531, 82 *Pac.* 889. West Virginia: *Toledo, etc., v. Thomas*, 33 *W. Va.* 566, 11 *S. E.* 37, 25 *Am. St. Rep.* 925. Rhode Island: *Garratt, etc., Co. v. Vermont, etc., Co.*, 20 *R. I.* 187, 37 *Atl.* 948, 38 *L. R. A.* 545, 78 *Am. St. Rep.* 852.

In North Dakota, where by statute foreign corporations were prohibited from transacting business until compliance, but no penalty was provided for violations, it was held, that contracts of unqualified corporations were not void or unenforceable, but could be enforced in North Dakota. A person who contracted with a

foreign corporation and received and retained the benefits of such contract was not permitted to raise the question of noncompliance. *Washburn Mill. Co. v. Bartlett*, 3 *N. D.* 138, 54 *N. W.* 544.

In New Jersey, in the case of *Alleghany v. Allen* (1903) 69 *N. J. Law*, 270, 55 *Atl.* 724, the suit was on a note made by a South Carolina corporation and the plea alleged that the plaintiff was doing business in New York, where the note was given in the course of business, without complying with the laws of New York, and that by the laws of New York no suit could have been brought there. *Held*, that New Jersey would not enforce a contract made void by the law of New York, the place where the contract was made, but as New York courts had decided that such contracts were not void, the New Jersey court would enforce it.

"The tendency of judicial decisions on this subject where the statute does not declare the contract to be void, is to strict construction, maintaining the validity of the contract, and holding that the only effect of such legislation in the state where it is enacted is to impose the prescribed penalties and the expressed disabilities. Outside of such state, until its courts give it a wider scope, no greater latitude will be attributed to it."

In Iowa foreign corporations not qualified are denied, by the statute, rights and privileges conferred on corporations so complying, and yet the failure of a foreign corporation to comply does not render void or unenforceable in Iowa contracts made by the noncomplying corporation. *Spinney v. Miller*, 114 *Iowa*, 212, 86 *N. W.* 317, 89 *Am. St. Rep.* 351; *Beach v. Wakefield*, 107 *Iowa*, 567, 76 *N. W.* 688, 78 *N. W.* 197.

In the following states a contrary interpretation is given to statutes similar to those in Delaware:

In Alabama noncomplying foreign corporations were denied the right to sue to recover by suit money loaned in Alabama. *Hanchey v. So., etc., Loan Ass'n*, 140 *Ala.* 246, 37 *South.* 272; *Dudley v. Collier*, 87 *Ala.* 433, 6 *South.* 304, 13 *Am. St. Rep.* 55; *Telegraph Co. v. Telegraph Co.*, 67 *Ala.* 26, 42 *Am. St. Rep.* 90; in which latter case the Supreme Court said that the prohibition of the Constitution without a penalty, was "just as much a police regulation for the protection of property interests of the citizens

of the state as the law forbidding vagrancy among its inhabitants."
*Armor, etc., Co. v. Vinegar, etc., Co.* (1906) 149 *Ala.* 205, 42 *South.*
866.

In Pennsylvania, contracts made in Pennsylvania by unquali-
fied foreign corporations are unenforceable there.   *Lasher v. Stim-
son*, 145 *Pa.* 30, 23 *Atl.* 552;  *Delaware, etc., Co. v. Bethlehem, etc.*,
*Ry. Co.*, 204 *Pa.* 25, 53 *Atl.* 533.

In the case of *Delaware, etc., Co. v. Bethlehem, etc., Co., supra*,
the plaintiff had built a road for the defendant at a cost of $31,000.
The plaintiff was a New Jersey corporation and did not register
in Pennsylvania until after the contract was completed but before
suit was brought.   Without citation of authorities, or much dis-
cussion, the court held that the plaintiff could not recover.

"The purpose of the act is to bring foreign corporations
doing business in this state within the reach of legal process.   This
purpose is not accomplished by a registration of the corporation
at the pleasure of its officers, or when it may be to their interest
to appeal to our courts.   The act is for the protection of those
with whom it does business, or to whom it may incur liability by
its wrongful acts, and nothing short of a registration before the
contract that it seeks to enforce is made, can give it a right of
action.   Any other construction of the act would violate its plain
words and wholly defeat its object by affording protection to the
corporation and denying it to the public."

In *Cary-Lombard Lumber Co. v. Thomas*, 92 *Tenn.* 587, 22
*S. W.* 743, the court held contracts by a noncomplying foreign
corporation, by which it furnished labor and materials for building
in Tennessee, were not enforceable there.   This was based on the
case of *Stevenson v. Ewing*, 87 *Tenn.* 50, 9 *S. W.* 230, where the suit
was by one who had not taken out a license to transact the business
in which engaged.   Other cases in Tennessee are:  *N. Y. B. &
Loan Ass'n v. Cannon*, 99 *Tenn.* 344, 41 *S. W.* 1054;  *Gilmer v. U.
S. Savings Bank*, 103 *Tenn.* 272, 52 *S. W.* 851;  *Harris v. Colum-
bia, etc., Co.*, 108 *Tenn.* 245, 67 *S. W.* 811.   All followed the above
amplification of reasons.

In *First Nat. Bank v. Coughran (Tenn. Ch.)* 52 *S. W.* 1112,
the Tennessee court went to the extreme limit in holding that even

in the hands of an innocent purchaser for value, without notice, a note given to a foreign noncomplying corporation was invalid and uncollectible.

In the federal courts the principle now adopted in the case under consideration has been with great vigor and emphasis uniformly adhered to. It is thus stated in *Dunlop v. Mercer*, 156 *Fed.* 545, 86 *C. C. A.* 435:

"The true rule is that the court should carefully consider in each case the terms of the statute which prohibits an act under a penalty, its object, the evil it was enacted to remedy and the effect of holding contracts in violation of it void, for the purpose of ascertaining whether or not the law making power intended to make such contracts void. And if from all these considerations it is manifest that the Legislature had not such intention, the contracts should be sustained and enforced; otherwise they should be adjudged void.    *    *    *

"There is no declaration in the statute that contracts of unqualified corporations doing business in the state without complying with the prescribed conditions shall be void. So far as we are able to ascertain, the Supreme Court of the state has never held that such was the meaning or the effect of the law. If that had been the purpose of the Legislature, it would have been easy to have made it manifest. A single line would have expressed and accomplished that purpose. The legal presumption is that the Legislature specified all the penalties it intended to impose, and it is not the province of the court to inflict more by construction.    *    *    *

"The object of the statute, the evil it was intended to remedy, the plain language of the entire act, the inequitable effect of the avoidance of contracts in violation of it, make it manifest that the law making power of the state never intended that contracts of unqualified corporations doing business in the state should be void."

No further authority need be cited than the case of *Fritts v. Palmer*, 132 *U. S.* 282, 10 *Sup. Ct.* 93, 33 *L. Ed.* 317, and the cases therein referred to. Judge Sanborn, in *Blodgett v. Lanyan, etc., Co.*, 120 *Fed.* 893, 58 *C. C. A.* 79, speaking of such statutes, said:

"The object of these statutes was to subject foreign corporations doing business in the state to the jurisdiction of the courts and to its inspection, and the supervision of its officers, not to the end that the citizens of the state might avoid their contracts and perpetrate injustice, but to the end that justice might be administered to both the corporation and the citizens."

The federal courts follow the construction placed on a state statute by the highest court of the state, and if it has been there clearly established, by such decisions, that contracts made by noncomplying foreign corporations are illegal and void in the particular state, such contracts are unenforceable in the federal courts. It is thus stated in *Groton Bridge, etc., Co. v. American Bridge Co. (C. C.)* 151 *Fed.* 871:

"If the highest court of the state has given construction to its statutes fixing the conditions on which a foreign corporation may do business within the state, and held they may make all contracts entered into by it without complying with such conditions void and they do not directly relate to interstate commerce, or discharge citizens from their contract obligations, or are not repugnant to the Constitution and laws of the United States, or inconsistent with those rules of public law which secure the jurisdiction and authority of each state from encroachment by all others, or those principles of natural justice which forbid condemnation without opportunity for defense, then the courts of the United States are bound by and give effect to such construction, but such contracts are not necessarily void because of noncompliance with such conditions, and the Court of Appeals of the State of New York has not given such construction to the statute referred to."

Where, however, the contract is not made void by the statute, or declared to be such by the state courts, but the statute merely prohibits unqualified corporations from maintaining an action thereon in any court in the state, the corporation may, nevertheless, maintain an action in the federal courts, since the federal court will not refuse to enforce a valid contract, harmless in itself, which is not enforceable in the state courts merely on account of noncompliance with the state administrative regulations. The states are powerless to limit the jurisdiction of the federal courts

in this respect. *Blodgett v. Lanyan, etc., Co.*, 120 *Fed.* 893, 58 *C. C. A.* 79; *Eastern Building, etc., Ass'n v. Bedford (C. C.)* 88 *Fed.* 7; *Sullivan v. Beck (C. C.)* 79 *Fed.* 202; *Dunlop v. Mercer*, 156 *Fed.* 545, 86 *C. C. A.* 435; *Butler, etc., Shoe Co. v. U. S. Rubber Co.*, 156 *Fed.* 1, 84 *C. C. A.* 167; *Groton, etc., Co. v. American Bridge Co. (C. C.)* 151 *Fed.* 871; *Johnson v. N. Y. Breweries Co.*, 178 *Fed.* 513, 101 *C. C. A.* 639; *Richmond Cedar Works v. Buckner (C. C.)* 181 *Fed.* 424.

With unusual uniformity the writers of text books, who presumably consider such questions philosophically, approve the position herein taken. *Beale on Foreign Corporations*, §§ 212, 213, says: "This represents the prevailing and it would seem the better doctrine." *Murfree on Foreign Corporations*, § 75, says the weight of authority is in favor of the position. *Morawetz on Private Corporations (2d Ed.)* § 665, thus states the rule:

"The object of the various statutes providing that foreign corporations, before transacting business, shall comply with specified conditions, such as filing copies of their charters, making statements of their financial conditions, appointing agents upon whom process can be served, etc., is to protect parties dealing with these companies from imposition, and to secure convenient means of obtaining jurisdiction in the local courts. These statutes place foreign corporations in the same position as domestic corporations, in the particulars provided for. It is clearly not the primary purpose of the Legislature, in passing these statutes to render the contract and dealings of corporations which have not complied with the statutes void and unenforceable. Hence, where the Legislature has not expressly declared that this result shall follow from a failure to comply with the statute, the courts ought not to imply such a result, unless this be necessary in order to obtain the primary object for which the statute was passed."

*Thompson on Corporations*, § 5274, thus states the general view:

"The modern doctrine is coming to this: That one who enters into a contract is, when sued by the corporation upon such contract, estopped to deny that the corporation had power to make the contract. The obvious reason of the rule is, that such a per-

son ought not to be allowed to oppose such a dishonest defense to a bargain which is fair so far as he is concerned. The rule of public policy which aims to keep corporations within the limits of their chartered powers, yields to the justice of the particular case; and the wrong which the corporation had done to the public, by transcending its powers, is left to be redressed in a public prosecution against the corporation."

The writer in 19 *Cyc.*, in reviewing the various decisions, refers to "the shocking immorality involved in decisions that a citizen should be judicially encouraged to repudiate his contract, fairly made with a foreign corporation, and keep the fruits of such contract while repudiating the obligation on his part, and so keep the goods without paying for them."

There is, then, ample and convincing authority, as well as good, wholesome reason, for adopting the rule now established in this state respecting those general administrative statutes concerning foreign corporations doing business generally here, and the conclusions here announced are not reached by overturning principles, precedents or policies established by the legislation of the state, relating to corporations doing particular kinds of business, or judgments of its courts thereon; but rather by adopting a broad, fair and liberal view, better fitted to changed conditions of the commercial life of the state in its relations to other states, and tending to promote rather than hinder fair dealing and commercial honesty.

The demurrer of the plaintiff below to the special plea in abatement will be sustained and the judgment below reversed.