MATTHEW H. TAGGART, Insurance Commissioner of Pennsylvania, as such, Liquidator of the Keystone Indemnity Exchange, Dissolved, v. GEORGE B. BOOKER AND COMPANY, a corporation of the State of Delaware, GEORGE B. BOOKER and HARVEY BOOKER.

(*November* 2, 1943.)

LAYTON, C. J., RICHARDS and TERRY, J. J., sitting.

*H. Newton White, Jr.*, (of Logan and Duffy) for the plaintiff.

*James R. Morford* (of Marvel and Morford) for the defendants.

Superior Court for New Castle County, September Term, 1941.

LAYTON, C. J.:

This cause was formerly before the court on a demurrer to the declaration. In the reported decision the substance of the plaintiff's allegations and the applicable laws of the State of Pennsylvania will be found. 3 *Terry* (42 *Del.*) 128, 28 A. 2d 690. It is sufficient to state here that the plaintiff, Insurance Commissioner of Pennsylvania, and duly appointed Liquidator of Keystone Indemnity Exchange, a reciprocal or inter-insurance exchange, organized under the laws of that State, found to be insolvent and now dissolved, declared in debt to recover the aggregate of assessments levied against the defendants as members of the Exchange holding insurance policies exchanged among the members, which policies were alleged to have been executed and delivered to the defendants in the City of Philadelphia.

The plaintiff demurred to the eighth, ninth and tenth pleas. In each of the pleas it was alleged that the contracts of insurance were not executed and delivered to the defendants in the City of Philadelphia, as alleged in the declaration, but on the contrary were solicited on behalf of the Exchange in the State of Delaware, were ordered by and delivered to the defendants in this State and became effective here by the acceptance thereof and payment of premiums thereon by the defendants in the State of Delaware.

In the eighth plea it was alleged that at the times of the execution and delivery of the contracts of insurance, neither the Exchange, its attorney-in-fact, nor its subscribers, possessed a valid and unrevoked Certificate of Authority issued in conformity with our laws to engage in, prosecute or transact insurance business within the limits of this State, and were, therefore, prohibited from so doing; wherefore, the supposed contracts were illegal and void and no action could be maintained for any supposed liability arising therefrom.

The ninth plea was much the same. The regulatory provisions concerning insurance companies were referred to in general terms; and it was alleged that the Exchange, its at-

torney-in-fact, and its subscribers had not complied with the requirements of *Article* 2, *Chapter* 20 of the *Revised Code*.

The tenth plea alleged that the supposed contracts of insurance were upon property situated in the State of Delaware; that the contracts were caused to be made on behalf of the Exchange and the risks purported to be insured were not approved in writing by a regularly licensed and commissioned agent resident in the State of Delaware; that none of the contracts was countersigned by such agent, nor did he receive the full premiums thereon; and that the State of Delaware had not received the taxes required by its laws to be paid on such premiums.

These defenses are based on certain statutory provisions governing the Insurance Department. 468, *Sec.* 7 of the *Code* provides that "No Insurance Company of any kind shall directly or indirectly issue policies, cover risks or engage in or transact insurance business of any kind in this State without having a valid and unrevoked Certificate of Authority therefor * * * issued by the Insurance Commissioner under his seal of office * * *."

478, *Sec.* 17 provides that "No Foreign or Alien Insurance Company, other than a life insurance company, shall make, write, place or cause to be made, written or placed, any policy, duplicate policy, or contract of insurance of any kind or character, or any general or floating policy upon property situated or located in this State, except after the said risk has been approved in writing by an agent who is a resident of this State, regularly commissioned and licensed to transact insurance business herein, who shall countersign all policies or contracts so issued, and who shall receive the full premium paid thereon and the State shall receive the taxes required by law to be paid on the premiums collected for insurance on all property located in this State. * * *"

484, *Sec.* 23 provides that "No Insurance Company, di-

rectly or by brokers, agents, solicitors, surveyors, canvassers or other representatives of whatever designation, nor any such broker, agent, solicitor, surveyor, canvassers or other representatives, shall solicit, negotiate or effect any contract of insurance of any kind, or sign, deliver or transmit, by mail or otherwise, any policy, certificate of membership or certificate of renewal thereof, or receive any premium, commission, fee or other payment thereon, on any property or thing, or on the life, health or safety of any person, or maintain or operate any office in this State for the transaction of the business of insurance, or in any manner, directly or indirectly, transact the business of insurance of any kind whatsoever within this State, unless such Company, person or firm, shall be duly authorized to do the same under the provisions of the Laws of this State."

Apart from the substantial question involved, the plaintiff insists that the allegations, common to the three pleas, with respect to the solicitation, order and delivery of the contracts in this State, and their becoming effective here, do not satisfy the requirements of good pleading in that these allegations contain mixed statements of fact and conclusions without specifying the ultimate facts from which the conclusions are drawn, and, in particular, it is said almost any proof would support the allegations that the contracts were solicited on behalf of the Exchange in this State.

The rule is well established, both for the protection of the parties and in aid of the court, that it is not sufficient to state the result or conclusion of fact arising from circumstances not averred, nor to make a general statement of fact which will serve as a dragnet for all sorts of evidence. The terminal line between a conclusion of law and an ultimate, pleadable fact is not always easy to draw. Pleading ultimate facts, as distinguished from evidentiary facts, usually involves conclusions. Generally it is not necessary to plead evidence; and the rule requiring particularity is

relaxed where the matter is peculiarly within the knowledge of the complaining party. A pleading is sufficient if it is intelligible to a person of ordinary understanding and affords him, the court and the jury the means of determining what is intended. *Universal Oil Products Co. v. Vickers Petroleum Co. of Delaware*, 2 *Terry* (41 *Del.*) 143, 16 A. 2d 795; *Stucker v. American Stores Co.*, 5 *W. W. Harr.* (35 *Del.*) 586, 159 A. 848; *Knight v. Industrial Trust Co.*, 8 *W. W. Harr.* (38 *Del.*) 480, 193 A. 723; 49 *C. J.* 45; 41 *Am. Jur.* 302, 311. The allegations of the pleas are ultimate facts reasonably informing the plaintiff of what he will be required to meet at the trial.

The pleas allege that the contracts of insurance were made in this State. What the facts will prove to be is not of immediate concern. The question, then, is not one of a contract of insurance made outside this State by a resident of Delaware upon property located here, as in *Atlas Mutual Insurance Co. by Hammond, Receiver v. Fisheries Co.*, 6 *Penn.* 256, 68 A. 4, and in *Allgeyer v. Louisiana*, 165 *U. S.* 578, 17 *S. Ct.* 427, 41 *L. Ed.* 832. If such were the case it would follow that the insurance laws of this State, as applied to such a contract, would be unconstitutional and inoperative as depriving a citizen of this State of his right in good faith to make a contract of insurance out of the State upon his property located in this State.

The phrase "any business" is more comprehensive in meaning than carrying on or engaging in business generally, and is generally construed as prohibiting the making of a single contract in the exercise of the corporate function. 17 *Fletcher, Cyc. Corp.* (*Perm. Ed.*), § 8470; and the question here is with respect to the validity of a contract of insurance made in this State by a foreign insurance exchange in violation of statutes prohibiting the doing of any business within this State except in the manner and under the conditions prescribed by the Legislature.

So far as this court is concerned the question is settled by decisions of our own courts. In *Beeber v. Walton, Whann & Co.,* 7 *Houst.* 471, 32 A. 777, the plaintiff, receiver of an insolvent foreign insurance company sued on premium notes given to the company by the defendants, residents of Delaware, in connection with an insurance contract with respect to property in this State effected through the company's agent in Wilmington. At the time the insurance contracts were issued and the notes given, the company had not obtained a certificate from the Insurance Commissioner authorizing it to transact the business of insurance and establish agencies in this State as required by law, although such certificate was later obtained. Objection was made to the offer in evidence of the applications for insurance and the premium notes. In sustaining the objection, the plaintiff thereafter taking non-suit, the court, after stating the statutory provisions, said that the principal object of the statute was to protect the citizens of this State who might seek to become holders of insurance policies against the fraudulent devices of spurious and insolvent companies; that at the time of the transactions the company was expressly prohibited by the statute from engaging in, prosecuting or transacting any insurance business within the limits of this State without having first obtained authority therefor, and having transacted insurance business here in clear violation of the statute, the contract made was illegal and void, and no action could be maintained on the contract, or on the premium notes; and that too notwithstanding the statute did not declare void a contract made contrary to its provisions. See *Hooper v. California,* 155 *U. S.* 648, 15 *S. Ct.* 207, 39 *L. Ed.* 297.

The Beeber case was cited and commented upon without disapproval by the Supreme Court in *Model Heating Co. v. Magarity,* 2 *Boyce* 459, 81 A. 394, *L. R. A.* 1915B, 665; and, inferentially at least, the same court, in *E. A. Strout Co. v. Howell et al.,* 4 *Boyce* 31, 85 A. 666, approved the decision in saying that, with respect to agencies for foreign life and

fire insurance companies the legislative purpose to make un-enforceable contracts made by persons engaged in such businesses until compliance with the statute was clear and unmistakable. See *Mendolia v. Zakrzewski*, 2 *Terry* (41 *Del.*) 354, 22 A. 2d 835.

The averments of the pleas, accepted as true on demurrer, disclose that the Exchange failed to comply with material provisions of the insurance laws. On the pleadings the contracts of insurance, forming the bases of the plaintiff's demand, are unenforceable; and, if the averments are sustained by proof, no recovery will be permitted.

The demurrers are overruled.