E. A. STROUT COMPANY, plaintiff below, plaintiff in error, *vs.* ALFRED P. HOWELL and MARY J. HOWELL, defendants below, defendants in error.

1. CORPORATIONS—FOREIGN CORPORATIONS—CARRYING ON BUSINESS IN STATE—COMPLIANCE WITH STATUTES—LICENSES.

Doing the things required by the Constitution and statute of a foreign corporation before it can do any business in the state does not entitle such a corporation to carry on a real estate agency without obtaining the license, which *Rev. Code* 1852, amended to 1893, *p.* 56 (13 *Del. Laws, c.* 117), requires any person or corporation to obtain before engaging in such business.

2. LICENSES—FAILURE TO OBTAIN—EFFECT ON CONTRACT—STATUTES.

*Rev. Code* 1852, amended to 1893, *p.* 56 (13 *Del. Laws, c.* 117), providing that no one, without first obtaining a license, shall engage in any of certain enumerated pursuits, including that of a real estate agency, without first

taking out a license, and making it a misdemeanor so to do, while primarily a revenue statute, must also be considered a regulative statute, rendering unenforceable a contract for commissions for one engaged in such business without a license; some of the kinds of business named in the statute, when first passed, being properly subject to regulation.

(*January* 21, 1913.)

CURTIS, Chancellor, and CONRAD and WOOLLEY, J. J., sitting.

*Alexander B. Cooper* and *Richard S. Rodney* for plaintiff in error.

*Levin Irving Handy* for defendants in error.

Supreme Court, January Term, 1913.

WRIT OF ERROR (No. 2, June Term, 1912) to the Superior Court, in and for New Castle County.

Action by the E. A. Strout Company against Alfred P. Howell and another. (No. 40, March Term, 1910). Motion to strike out plaintiff's general demurrer to defendant's fifth plea. Demurrer stricken out. Judgment for defendants, and plaintiff brings error. Affirmed. (See also, 2 *Boyce* 489, 82 *Atl.* 238; 3 *Boyce* 252, 82 *Atl.* 1081.)

CURTIS, Chancellor, delivering the opinion of the court:

The writ of error in this case is to the final judgment sustaining the demurrer to the replication to the fifth plea. The action was in assumpsit to recover payment for commissions for selling land for the defendant. By the fifth plea the defendants set up the defense that the plaintiff did not have a license from the State of Delaware to engage in the business of conducting a real estate agency. To this plea the plaintiff replied that it was incorporated under the laws of Maine, had complied with the laws of Delaware respecting foreign corporations doing business in Delaware, and that one Zepp, a real estate agent, duly licensed under the laws of Delaware, did, as the agent or representative of the plaintiff, make the sale, for the making of which the commission was demanded and sued for. A demurrer of the defendant to this replication was sustained by the court below, on the authority of the case of *Reeder v. Jones*, 6 *Penn.* 66, 65 *Atl.* 571, a case like this one, except that the real estate agent was an individual and not a corporation.

In the court below both court and counsel treated and considered the question raised as though there were in the pleadings an allegation that the defendant company was itself engaged in, prosecuted, followed, or carried on the trade, business, pursuit, or occupation of a real estate agency, and, therefore, that in making the sale referred to in the declaration it violated the following section of a statute of the State of Delaware, entitled "An act to raise revenue and provide for the current expenses of the state government":

"*Section* 1. That no * * * company or corporation, without having first obtained a proper license therefor, as hereinafter provided, shall within the limits of this State, be engaged in, prosecute, follow, or carry on any trade, business, pursuit, or occupation in this section hereinafter next mentioned; that is to say, * * * real estate agency, * * *." See *Chapter* 117, *Vol.* 13, *Laws of Delaware*, *p.* 105, passed March 22, 1867; and published as amended in *Revised Code* of 1893, *p.* 56.

In this court, also, it was argued by counsel on both sides as though it was averred clearly that the plaintiff was conducting a real estate agency in Delaware by branch office, or agency located here, and without a license. Applying critical tests to the pleadings, perhaps this averment is not clearly made, but the case will be decided as though it was so made.

[1] The plaintiff relied largely on the decision of this court in the case of *Model Heating Co. v. Megarity*, 2 *Boyce* 459, 81 *Atl.* 394. There it was held that a corporation incorporated under the laws of a state other than Delaware, doing business here by branch office, or agent located here, could recover here for goods sold and delivered to a resident here, notwithstanding the constitutional and statutory provision that no such corporation could so do business here until it had complied with certain requirements, which the vendor in that case had not done. In the case now before the court, the plaintiff, in its replication to the fifth plea, avers compliance with these regulations. But it is quite clear that this compliance does not of itself authorize the defendant company to carry on a particular kind of business, regardless of laws of this state requiring that a license be had before that particular kind of

business can be carried on. When a foreign corporation comes into this state by branch office, or agents, or representatives, located here to do a particular kind of business here, it must comply with the statutory regulations prescribed for those who transact that kind of business. If it engages in any of the kinds of business mentioned in the above statute, it must have a license therefor, and it is not sufficient for it to have complied with other legislative provisions applicable to all foreign corporations irrespective of the nature of the business which they transact. Therefore, the plaintiff in making the sale for the defendant violated the statute above referred to, notwithstanding it had complied with the Constitution and provisions of other statutes relating to foreign corporations generally, because it had not received a license to carry on the business of a real estate agency.

[2] Does this failure to have such license prevent the plaintiff from recovery in this case? In this case the act was one for raising revenue as its primary object and it is so stated in its title. By the statute no person, without having first obtained a license therefor, shall carry on any of the several kinds of business therein designated, including a real estate agency, and a penalty was provided "for every such offense." Unenforceability of contracts was not made a further penalty and contracts made by those without licenses were not made unlawful.

In the case of *Model Heating Co. v. Megarity, supra,* the act there under consideration made it unlawful for a foreign corporation to do business in Delaware by branch office, etc., until it had complied with certain regulations, and any corporation doing business without having first complied was made subject to a penalty for each and every offense. There the question was whether a contract made by a foreign corporation doing business in Delaware by branch office without having complied with the requirements relating to such corporations, was enforceable in this state. It was held that the court should consider the purposes and object of the act, and not impose the penalty of unenforceability of its contracts as an additional penalty, not imposed by the act, when, as the court found, the main purpose of the act was to bring all foreign corporations doing business here, within the reach of the

process of the state courts, without respect to their purposes, and did not impose the penalty of unenforceability of contracts. When a statute is silent as to the unenforceability of contracts made by one who has not complied with the statute, the whole act and its purposes should be considered in determining whether the contract is enforceable. *Model Heating Co. v. Megarity*, 2 *Boyce* 459, 81 *Atl.* 394, 397.

The provision of the law under consideration is primarily an act to obtain revenue, but it evidently represents the public policy of the state respecting certain kinds of business therein specified. To ascertain this policy and find within the act its ultimate purposes beyond the primary one of the raising of revenue, the act as it was originally passed should be considered, for there was manifested most clearly the legislative intent, rather than at later periods when amendments had been made striking out some and putting in other kinds of business as subject to license regulations.

The original act was passed March 22, 1867. By repealing prior acts specifically and by general words, it represented a new and, perhaps, different policy in legislation respecting revenue raising. It required licenses for several classes of business, including insurance agencies, real estate agencies and sellers of intoxicating liquors. The necessity of a judicial recommendation of persons applying for licenses to sell intoxicating liquors was omitted. By later amendments insurance agencies and liquor sellers were removed from the operation of the statute and made subjects of special statutes, and lawyers, doctors, dentists, conveyancers and bankers were added. Such is in general the present form of the statute.

The court in the case of *Model Heating Co. v. Megarity, supra,* did not express an opinion whether the case of *Reeder v. Jones, supra,* was properly decided, or not, but pointed out some elements of difference between the two cases, and expressly disclaimed an intention to approve or overrule *Reeder v. Jones,* or any other Delaware case. In all of the Delaware cases the court found evidence of legislative purpose, or express phraseology which showed they were not useful as guides to judicial interpre-

tation of the provisions of law relating to foreign corporations then under consideration. So far as the license statute in question is concerned, this court has not heretofore expressed itself in a definite way.

Looking at the statute as originally passed, it seems clear that it was not enacted merely to raise revenue, but to promote some object of public policy, viz.: to prevent the carrying on of certain specified kinds of business, at least some of which involved danger to the morals of the people and some others at least unusual opportunities to deceive and defraud. Of the first class are sellers of intoxicating liquor, and this class is well recognized as peculiarly subject to legislative restriction and regulation. Of the other class are agencies for foreign life and fire insurance companies. The legislative purpose to make unenforceable contracts made by persons engaged in these kinds of business, until compliance with the statute, is clear and unmistakable. This purpose is to be read into the statute not because it has a recurring penalty for each and every offense, and even though it does not in terms make it unlawful to carry on these kinds of business until compliance therewith, or in terms declare unlawful, or make unenforceable, the contracts of those who engage in them without a license. Such purpose seems clearly to exist, even though there are not in the act as passed any detailed regulations for the conduct of the kinds of business mentioned therein, such as an official inquiry as to mental, moral or physical fitness, or financial responsibility. The very omission of these features strengthens the view that in addition to the recurring penalties named in the act, the aid of the courts in enforcing contracts should be refused to all who do not comply with the condition fixed by the statute as a prerequisite to the right to carry on the specified kinds of business, in the course of which the contract in question was made.

The original legislative purpose is not affected by the fact that insurance agencies, insurance companies and sellers of intoxicating liquor are not now subject to the provisions of the act, but are now regulated by special statutes with numerous restrictions to protect the public from imposition, fraud, or to promote morality, peace and good order. The object of the statute as

Opinion.

originally passed was primarily to raise money, but also to restrict and regulate business of certain kinds by withholding the right to carry them on except from those who obtain a license therefor. It operates on the business as well as on the person. Granting the license is the means by which the named kinds of business are in a measure restricted, regulated and controlled, and is also a method for obtaining revenue.

The principle here alluded to is well stated by Judge Cooley:

"When the tax takes the form of a tax on the privilege of following an employment, convenience in collections will commonly dictate the requirement of a license, and the person taxed will be compelled to pay the tax as a condition to the right to carry on the business at all. In such a case the business carried on without a license will be illegal, and no recovery can be had on contracts made in the course of it." *Cooley on Taxation*, (*2d Ed.*) *p.* 572.

The statute is not a general administrative statute, applicable to all persons, but a regulative statute, applicable to certain kinds of business with revenue raising as a primary feature, but not its only purpose. It is to be considered a regulative statute even though some of the kinds of business therein mentioned do not at this period of time seem to be subjects for regulation, if there be named in it other kinds of business which at the time the act was passed were and now are regarded as properly subject to regulation. There can be no doubt that the framers of the statute intended to render unenforceable a contract made for the sale of intoxicating liquor by a person unlicensed to carry on that business, for the character of the business indicates such intent. This same intent must apply to all the kinds of business named in the act when passed, and it therefore includes contracts made by those engaged in business as real estate agencies for services in making sales of real estate.

It does not seem necessary, or important, to review the cases cited on both sides, which show an irreconcilable conflict. All recognize, or at least do not controvert, the principle, that the legislative intent and purpose of the act should be ascertained and if clearly indicated, or be clearly or reasonably inferable from

the subject-matter affected by the act, as well as its language, then it should control the court.

The demurrer to the replication to the fifth plea was rightly sustained, and there was no error in the court below, and the judgment will, therefore, be affirmed.