JOSEPH MENDOLIA, trading as Wilmington Home Remodeling Company, *v.* JOHN J. ZAKRZEWSKI, ET AL.

(*November* 20, 1941.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*George W. Lilly* for plaintiff.

*Clair J. Killoran* for defendants.

Superior Court for New Castle County, September Term, 1941.

LAYTON, Chief Justice:

The plaintiff sued to recover on a building contract. The defendant, in one of the pleas, alleged as a defense that the plaintiff had not secured a license to carry on the business of "contractor and builder" as required by ordinance of the City of Wilmington. The plaintiff demurred.

By Chapter 29, Volume 31, Delaware Laws, the Mayor and Council of Wilmington, "to provide for the payment of its debts and expenses," was authorized to issue licenses to and to require and receive a license fee from the owner of any business carried on within the corporate limits of the City. Pursuant to the statutory authority, an ordinance was passed providing that no person without first having obtained a proper license therefor shall engage in or carry on, inter alia, the business of contractor and builder. Violation of the ordinance was declared to be a misdemeanor, under penalty of fine, imprisonment, or both.

The defendants concede that the primary and, perhaps, sole purpose of the licensing ordinance was to obtain revenue, as appears from the language of the enabling statute;

and, upon this concession, the plaintiff contends that his failure to secure a municipal occupational license in no way affects the legality of the contract sued on.

*E. A. Strout Co. v. Howell et al.,* 4 *Boyce* 31, 85 *A.* 666, is decisive of the question; and that this decision may be properly understood, a brief reference to other decisions of our courts in analogous cases is made necessary.

In *Reeder v. Jones,* 6 *Penn.* 66, 65 *A.* 571, 572, the plaintiff, a real estate agent, sued to recover commissions alleged to be due under an agreement for the sale of real estate. One of the defenses was that the plaintiff had not obtained a license to conduct a real estate agency as required by the statute (*Rev. Code,* 1893, *c.* 56; *Ch.* 117, *Vol.* 13, *Del. Laws*). The jury was instructed to find for the defendant, the court saying, "as the law requires that no person shall engage in such business without first procuring a license therefor, we therefore say to you that the plaintiff's action was illegal and that the contract was an illegal contract."

In *Model Heating Co. v. Magarity,* 1 *Boyce* 240, 75 *A.* 614, the question was whether the plaintiff, a foreign corporation, could recover on a contract, it not having complied with the provisions of Section 5 of Article 9 of the Constitution of this State providing that "No foreign corporation shall do any business in this State through or by branch offices, agents or representatives located in this State, without having an authorized agent or agents in the State upon whom legal process may be served," and applicable executing statutes. It was held that the plaintiff could not recover. This decision was reversed by the *Supreme Court,* 2 *Boyce* 459, 81 *A.* 394, 396, L.R.A. 1915B, 665, on the ground that the main purpose of the statute was to bring all foreign corporations doing business in this State within the reach of the process of the State courts, without respect

to their purposes, and the penalty of unenforceability of contracts was not imposed. The court reviewed the decisions in this State, and in speaking of *Reeder v. Jones, supra,* said this: "The principle applied in *Reeder v. Jones* \* \* \* is equally well established. A person carrying on the business of real estate broker without having a license to carry on that particular business was not allowed to recover commissions for making a sale of real estate. The purpose of this statute is to obtain revenue, and it is made unlawful for all unlicensed persons to act as real estate brokers, and so, necessarily, their contracts for acting as such are unenforceable."

This would seem to be plain and understandable language of approval, and was so accepted by the Superior Court in *E. A. Strout Co. v. Howell et al.,* 2 *Boyce* 489, 82 *A.* 238. There, a foreign corporation sued to recover commissions for making a sale of real estate. One of the pleas was that it had failed to obtain a real estate broker's license. The replication alleged that it was duly authorized to do business in this State through branch offices, agents or representatives located in this State; and that its duly licensed agent here had effected the sale of real estate for which the commissions were due. The defendant demurred. This court, speaking through Chief Justice Pennewill, said that the opinion of the Supreme Court in *Model Heating Co. v. Magarity* had been carefully considered and nothing had been found in that opinion which had in any manner or to any extent overruled or disapproved of the decision in *Reeder v. Jones;* but, on the contrary, the law laid down in that case had been approved rather than disapproved. The demurrer was sustained, and the result was, of course, that the contract was held to be unenforceable. In the *Supreme Court,* 4 *Boyce* 31, 85 *A.* 666, 668, surprisingly enough, the court took occasion to say that in *Model Heat-*

*ing Co. v. Magarity, supra,* no opinion had been expressed whether *Reeder v. Jones* had been properly decided or not, and that the court had expressly disclaimed an intention to approve or overrule that case. The judgment of the court below was affirmed, but upon a different theory. The court examined the original statute (*Ch.* 117, *Vol.* 13, *Del. Laws*). First it was pointed out that unenforceability of contracts was not made a further penalty, and contracts made by those without licenses were not made unlawful; and the court was of opinion that the statute, as originally passed, "was not enacted merely to raise revenue, but to promote some object of public policy, viz., to prevent the carrying on of certain specified kinds of business, at least some of which involved danger to the morals of the people and some others at least [involved] unusual opportunities to deceive and defraud."

The original statute required licenses in the following occupations: Auctioneering, foreign life insurance agency, foreign fire insurance agency, vending of goods by samples, keeping travelling stallions or jacks for the use of mares, keeping eating houses, taking photographs, acting as brokers, real estate agency, exhibiting circuses, practicing jugglery, and selling vinous, spiritous, or malt liquors. Violation of the act was made a misdemeanor, with penalty in the amount of the tax, imprisonment not exceeding two years, a fine not exceeding $500, or both. Of the kinds of business affecting the public morals, the court selected the selling of intoxicating liquor, and of the businesses affording unusual opportunities to deceive and defraud, foreign life and fire insurance agencies were named as peculiarly subject to legislative restriction and regulation. And it was said that the legislative purpose to make unenforceable contracts made by persons engaged in these kinds of business until compliance with the statute was clear and un-

mistakable; that the purpose was read into the statute not because of a recurring penalty for each offense, and even though the statute did not declare unlawful or make unenforceable the contracts of those engaged without a license in the enumerated businesses; that the purpose to regulate clearly existed even though the statute did not contain any detailed regulations for the conduct of the businesses mentioned therein, such as an official inquiry as to mental, moral or physical fitness, or financial responsibility; that the original legislative purpose was not affected by the fact that insurance agencies and sellers of intoxicating liquors were no longer subject to the provisions of the act, but were regulated under special statutes; that the statute was not a general administrative statute, applicable to all persons, but a regulative statute, applicable to certain kinds of business with revenue raising as a primary feature, but not its only purpose; and the court proceeded to say: "It is to be considered a regulative statute even though some of the kinds of business therein mentioned do not at this period of time seem to be subjects for regulation, if there be named in it other kinds of business which at the time the act was passed were and now are regarded as properly subject to regulation. There can be no doubt that the framers of the statute intended to render unenforceable a contract made for the sale of intoxicating liquor by a person unlicensed to carry on that business, for the character of the business indicates such intent. This same intent must apply to all the kinds of business named in the act when passed, and it therefore includes contracts made by those engaged in business as real estate agencies for services in making sales of real estate." The principle deducible from the opinion is that where the licensing statute is not regulative in its nature, and is for revenue purposes only, and does not declare contracts entered into by unlicensed persons unenforceable as a further penalty for violation, and, in terms,

does not declare such contracts to be unlawful, a contract entered into by one who has failed to take out a prescribed license is not thereby rendered unenforceable.

This was the state of the law when *Allmon v. Crooks & Co.,* 6 *Boyce* 159, 97 *A.* 424, 425, an authority relied on by the defendants, was decided. There it appears that an unlicensed plumber sued to recover on a contract. A special plea alleged the failure to obtain a license to carry on the occupation. The plaintiff demurred. This court, on the authority of *E. A. Strout Co. v. Howell, supra,* said: "We are fully satisfied, and so decide, that in Delaware a contract cannot be enforced by a party who has failed to obtain a license to do business, or carry on an occupation as provided by the statute of the state, if that defense is pleaded." At that time, by Section 196, *Rev. Code,* 1915, "Plumbers, soap and candle makers" were included in a list of manufacturers required to obtain a manufacturer's license, the section expressly not being made applicable to the manufacturer of alcoholic liquors. Manufacturing without a license was made a misdemeanor under penalty of a fine and the amount of the tax. Possibly, plumbers were subject to the Mercantile License Act, Section 198, by which it was declared that the act should apply to the buying and selling of any property of whatever description either by wholesale or retail. Section 217 of the Code of 1915 was concerned with occupational licenses, and was an extension of Chapter 117, Volume 13, Delaware Laws. The occupation of plumbing was not included in the section. It would seem clear, therefore, that the legislative purpose to regulate as well as to raise revenue could not be read into the statute or statutes involved in the Allmon case. Nor do these statutes, in terms, declare contracts made by unlicensed persons to be unlawful or provide as a further penalty the unenforceability of the con-

tract. It seems clear enough, therefore, that this court, in the Allmon case, proceeded on the theory that the mere failure to obtain an occupational license would render a contract entered into by an unlicensed person unenforceable, regardless of the character of the licensing statute.

This court should not, as it has often said, disturb its own prior decision on a point of law except upon clear manifestation of error; but we are, of course, bound by the pronouncement of the highest judicial authority of the State, and it is not our province to comment upon the persuasiveness of the reasoning of that authority. We are satisfied that this court in *Allmon v. Crooks & Co., supra,* followed the letter, perhaps, but certainly not the spirit of the decision of the Supreme Court in *E. A. Strout Co. v. Howell, supra;* and being convinced that it was in error, we must decline to be bound by the ruling in the Allmon case.

We are confronted here with a municipal ordinance under a statute authorizing the City of Wilmington to license occupations for revenue purposes only; and we must hold, in conformity with the view of the Supreme Court, that the contract sued on here was not rendered unenforceable by the failure of the plaintiff to obtain a license to carry on his occupation.

The demurrer to the plea is sustained.