PG CONSTRUCTION CO., INC., a Maryland corporation, and Harry J. McCullough, Plaintiffs,

v.

GEORGE & LYNCH, INC., a Delaware corporation, County Council of Sussex County, Delaware, a body politic of the State of Delaware, Dale R. Dukes, William D. Stevenson, Sr., Ralph E. Benson, George B. Cole, and George J. Collins, Defendants.

Civ. A. No. 93–285 MMS.

United States District Court,
D. Delaware.

Sept. 16, 1993.

Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, DE, for plaintiffs.

Daniel F. Wolcott, Jr., of Potter Anderson & Corroon, Wilmington, DE, for defendant George & Lynch, Inc.

Dennis L. Schrader of Wilson, Halbrook & Bayard, Georgetown, DE, for remaining defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

Plaintiffs PG Construction Co., Inc. and Harry J. McCullough, a taxpayer of Sussex County, seek a preliminary injunction against the County Council of Sussex County, Delaware ["County"] and George and Lynch, Inc. ["G & L"]. After soliciting bids on a contract to "Design/Build Wastewater Treatment and Disposal Facilities for the West Rehoboth Expansion of the Dewey Beach Sanitary Sewer project No. 90038," the County announced its decision to award the contract to the low bidder, G & L. The contract has not officially been entered into, i.e., signed by the County and G & L, by agreement of the parties. Instead, they await this Court's decision on plaintiffs' request to preliminarily enjoin the County and G & L from officially entering into the contract. Subject matter jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332 (1988). For the reasons that follow the Court will not grant the preliminary injunction.

## II. *FACTUAL BACKGROUND*

In the summer of 1992 Sussex County advertised for bids to Design/Build a wastewater treatment facility ["the project"] which would permit expansion of sanitary sewers in the West Rehoboth Beach area. The County subsequently issued a number of addenda to the bid specifications, the first in December of 1992. Docket Item ["D.I."] 13 at A–123–31. That addendum stated, "The Hercules property is a 600 ± acre tract of land located approximately 3 miles north of the sewer district which has been purchased by Sussex County and is available for the Design/Builder's use on this project." *Id.* at A–124. The Hercules property was apparently purchased by the County for $1,979,332.00 in anticipation of its use as part of the project. The Agreement of Purchase and Sale specified:

BUYER agrees that the property to be purchased under this Agreement is to be used by BUYER only for a sanitary sewage treatment and waste water disposal facility. BUYER agrees not to use or resell all or part of the premises for any other purpose other than the aforesaid use for a period of five (5) years from the closing date.

*Id.* at A–230.

After a pre-proposal meeting held on December 11, 1992, the County determined it needed to further refine the plans and specifications for the project. *Id.* at A–242–43. Addendum 2 suspended the bidding process to allow for such further refinement. *Id.* at A–122.

The County narrowed its possible treatment methods. Addendum 3 advised bidders the County had finally settled on a "4.3 mgd wastewater treatment and disposal system, using deep aerated lagoons and spray irrigation." *Id.* at A–92. It was recognized that the Hercules site was not large enough to accommodate both the mechanical portions of the project and the sizeable spray field required for the wastewater. *Id.* at A–292; D.I. 18 at B–23. Addendum 3 also stated:

2. The project scope has been revised to include the following:

\* \* \* \* \* \*

c. Selection of treatment plant site and clear title transfer of site ownership to County prior to construction, if site is not already County-owned.

d. Selection of spray irrigation site(s) and 20 year lease of site(s) to County, if site(s) is not already County-owned.

e. Selection of biosolids application site(s) and 20 year lease of site(s) to County if site(s) is not already County-owned.

D.I. 13 at A–92.

After holding another pre-proposal meeting on April 19, 1993, the County issued Addendum 5.[1] *Id.* at A–80. This addendum stated:

2. INSTRUCTIONS TO DESIGN/BUILDERS.

Design/Builders shall complete PROPOSAL EVALUATION FORM, as provided herewith, and submit as an attachment to the PROPOSAL FORM.

Contract award will be base [sic] on the lowest responsible proposal, using Item 3 from PROPOSAL EVALUATION FORM as the basis of comparison. Note that the actual contract will be written for the amount of the Total Base Bid (Item 1 from PROPOSAL EVALUATION FORM).

D.I. 13 at A–80. Item 1 of the proposal evaluation form directed the bidder to enter the amount of its total base bid while Item 2 asked the bidder if it proposed to use the Hercules site. If the bidder did propose to use the Hercules site, it was to enter the fixed dollar amount of $1,979,332.00. If not, the bidder was instructed to enter $0.00. Item 3 directed the bidder to add Items 1 and 2 to arrive at the total cost of the project. *Id.* at A–89. By requiring a bidder using the site to include the full cost of all the real estate used by that bidder for the project, the County could directly compare the total cost of a bid which did not involve

D.I. 13 at A–90.

---

1. Addendum 4, which is not particularly relevant to this matter, was issued on April 14, 1993.

use of the Hercules site with a bid which did use the Hercules site.

The proposal form which the bidders filled out and submitted to the County required the completion of a "LISTING OF SUB-CONTRACTORS" form as part of the bid. *Id.* at A–135. On that form the County listed the kinds of subcontractors which it both believed would be necessary for completion of the project and were of sufficient importance to be identified. The form required the bidder to submit for each subcontractor type, the name and address of each such subcontractor and an indication of whether that subcontractor was "Properly Qualified and Licensed for Trade." *Id.* at A–136–38.

Both defendant G & L and plaintiff PG submitted bids on the project. *Id.* at A–132–39, A–166–88. PG's proposal made use of the County owned land known as the Hercules site as well as other parcels of real estate. *See Id.* at A–134, A–139. G & L, on the other hand, sited its proposed facility on a larger tract, known as the Townsend site, that could accommodate the entire project. *Id.* at A–205(b). The bids were opened on May 10, 1993. G & L's bid of $15,831,000.00 was $235,322.00 lower than PG's bid of $16,-066,332.00. *See Id.* at A–139, A–170. Thereafter, the County announced its determination to award the contract to G & L.

PG, along with plaintiff McCullough, subsequently filed suit requesting the Court to preliminarily and permanently enjoin the County and G & L from formally entering into the contract for the project, to require the County to award the contract to PG, or alternatively to award PG as compensatory damages the costs and expenses incurred in preparing its bid. Plaintiffs' request for pre-

liminary injunctive relief is presently before the Court.

## III. DISCUSSION

■ In determining whether to issue a preliminary injunction, the Court must analyze four factors: (1) the likelihood the movant will succeed at a final hearing on the merits; (2) the extent of irreparable harm suffered by the movant as a result of the complained of conduct; (3) the extent of irreparable harm suffered by the non-movant if the preliminary injunction is granted; and (4) the public interest. *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 374 (3d Cir. 1992). Under the traditional Third Circuit Court of Appeals test the movant must demonstrate a likelihood of success on the merits and the probability of harm if relief is not granted. It need not, however, establish "the possibility of harm to other interested persons from the grant or denial of the injunction" or that the public interest will be best served by a grant of relief. Instead, the traditional test indicates these latter two factors should be taken into account when they are relevant. *Hoxworth v. Blinder,* 903 F.2d 186, 197–98 (3d Cir.1990); *Morton v. Beyer,* 822 F.2d 364, 367 & n. 3 (3d Cir.1987); *Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir. 1975). At other times, however, the Third Circuit Court of Appeals has stated, "All four factors should favor preliminary relief before the injunction will issue." *Jiffy Lube,* 968 F.2d at 374. *See also Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990); *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987). The Court will address the parties' arguments as to each of the factors.[2]

---

**2.** At oral argument held on July 21, 1993, the Court *sua sponte* raised both standing and ripeness questions. The standing question arose because there is some Delaware law that one objecting to the award of a public contract must be a taxpayer of the entity which is awarding a public contract. *Delmarva Drilling Co., Inc. v. Kent County Dept. of Community Dev.,* 1988 WL 39968 at *2 (Del.Ch.Ct. Apr. 26, 1988). *See also Gannett Co., Inc. v. State of Del.,* 1993 WL 19714 (Del.Ch.Ct. Jan. 11, 1993). Plaintiff PG paid taxes to the State of Delaware, but not to Sussex County. The standing concern was satisfied with the addition of Harry J. McCullough, a Maryland

resident and Sussex County taxpayer, as a party plaintiff.

The concern about ripeness was triggered by the Court's concern that award of the contract to G & L was conditioned upon three contingencies. Thus, even if the Court were to deny the application for preliminary injunction, clearing the way for the County to enter into the contract with G & L, the County would not necessarily do so if the contingencies were not satisfied. The first contingency, G & L's obtaining from local, state and/or federal agencies permits and approvals necessary to commence the project, was satisfied with the securing by G & L of the necessary

## A. *PROBABILITY OF SUCCESS ON THE MERITS*

The pivotal issue in this case is whether plaintiffs are likely to succeed at a final hearing on the merits. Plaintiffs assert Sussex County's determination to award the public works contract to G & L must be set aside as violative of Delaware Law and assert three possible grounds for a finding of such violation. Plaintiffs contend the County's actions violated two statutory provisions, Del. Code Ann. tit. 29 § 6911 (1991) and Del.Code Ann. tit. 30 § 2502 (Supp.1992). In addition, plaintiffs assert the County's actions violated the common law principle that state action may not be arbitrary or capricious. Each of plaintiffs' contentions will be addressed seriatim.

### 1. *Asserted Violation of Del.Code Ann. tit. 29 § 6911 (1991): G & L's Listing of Itself as Subcontractor to do Plumbing Work*

Plaintiffs assert two possible bases for finding that the County violated Del.Code Ann. tit. 29 § 6911 (1991). First it claims G & L's bid was in violation of section 6911(2) because G & L identified itself as the plumbing subcontractor for the project when it had no plumbing license. Second, plaintiffs appear to argue that G & L's bid violated Del.Code Ann. tit. 29 § 6911(1) (1991) because G & L failed to identify any plumbing subcontractor for the project. Two possible defenses suggest themselves as to the alleged violations of section 6911: 1) the County's actions are not subject to judicial review and 2) the express language of the statute demonstrates no violation of section 6911 has occurred.[3] The Court finds the language of Del.Code Ann. tit. 29 § 6911 (1991) precludes a finding of any violation.

#### a. *Judicial Review is Unavailable*

As a preliminary matter, defendant G & L contends this Court is unable to reach the merits of plaintiffs' section 6911 argument because the explicit language of section 6911(2) precludes judicial review of any alleged violation of section 6911(2). The language referred to specifies:

> The decision of the awarding agency as to whether a bidder who lists himself as the subcontractor for a subcontractor category set forth in the "listing" as provided in subsection (b) of § 6904 of this title for such subcontractor category shall be final and binding upon all bidders, and no action of any nature shall lie against any awarding agency because of its decision in this regard.

Del.Code Ann. tit. 29 § 6911(2) (1991). The Court is unpersuaded.

As noted by Vice–Chancellor Hartnett in *C & D Contractors, Inc. v. City of Wilmington,* C.A. 6377, slip. op. at 6, 1981 WL 15096 (Del.Ch.Ct. March 18, 1981), this provision cannot confer any immunity on a governmental body as it makes no sense. This statute presumably should say that the decision of the awarding agency as to whether or not something is one way or another is final and the awarding agency is not subject to suit for its decision. However, this section never says what decision the agency may make without resulting suit. This sentence, presumably the result of inadvertent drafting error on the part of the Legislature, is incapable of enforcement. The Court preliminarily holds, therefore, that it provides no

---

permits and approvals. The second contingency, dismissal of a state court law suit, has been accomplished since oral argument. The third contingency, approval by Sussex County and the Department of Natural Resources and Environmental Control of the Facilities Plan and Amendment No. 1, was satisfied by the approval of Sussex County Council on July 27, 1993, and the approval of the Department of Natural Resources and Environmental Control on September 16, 1993. If any or all of these contingencies were impediments to judicial resolution, an issue which the Court does not determine, they have been resolved and the matter is ripe for determination.

3. Defendants also appear to argue the requirements of section 6911 did not apply because any plumbing work involved in the project was *de minimis.* This argument must fail. The statute defines the relevant *de minimis* amount. It states that the requirements of section 6911 apply where the amount of the contract exceeds $10,000.00. Del.Code Ann. tit. § 6911 (1991). The amount of the contract vastly exceeds $10,000.00. Thus, the facts of this case simply cannot support a *de minimis* defense.

grounds for defense of an alleged violation of section 6911.

### b. *Statutory Language*

■ Plaintiffs assert subsection 6911(2) and subsection 6911(1) were violated because G & L identified itself, a general contractor unlicensed in plumbing, as the plumbing subcontractor for the project. Analysis of the language of each subsection shows that no violation has occurred.

Section 6911(2) of Title 29 of the Delaware Code provides in pertinent part:

> (2) Neither the State nor county ... shall accept any bid for [a public works contract, the probable cost of which exceeds $10,000,] or award any such contract to any bidder, as the prime contractor, if the bidder has listed himself as the subcontractor for any subcontractor category set forth on the "listing" as provided in subsection (b) of § 6904 of this title, unless it has been established to the satisfaction of the awarding agency that the bidder has customarily performed the specialty work of such subcontractor category by artisans regularly employed by the bidder in his organization, that the bidder is duly licensed by the State to engage in such specialty work, if the State requires such licenses, and that the bidder is recognized in the industry as a bona fide subcontractor or contractor in such specialty work and subcontractor category.

Del.Code Ann. tit. 29 § 6911 (1991). Plaintiffs contend the County's acceptance of G & L's bid violated this subsection because in G & L's bid it identified itself, rather than some bona fide plumbing subcontractor, as the entity that would perform the plumbing work for the project even though G & L had no plumbing license.

The plain language of section 6911(2) makes clear that the only way the County may be found to have violated this provision by accepting G & L's bid is if: (1) the "list" generated pursuant to Del.Code Ann. tit. 29 § 6904 (1991) included plumbing as a subcontractor category;[4] and (2) G & L identified itself as the plumber for the contract. The statute further provides, however, that even if these two elements are satisfied, no violation may be found if the County is satisfied that: (1) G & L has customarily performed plumbing work through plumbers normally in its employ; (2) G & L is licensed by the State of Delaware to perform plumbing services; and (3) G & L is recognized in the industry as a bona fide plumber.

An argument, such as PG's, that G & L's bid was unacceptable under section 6911(2) because G & L did not possess a plumbing license necessarily *presumes* the two "prerequisite" elements have been satisfied, i.e., that (1) plumbing was "listed" pursuant to section 6904 as a subcontractor category and (2) G & L listed itself as the plumber for the contract. Only if both of these prerequisites are met does G & L's licensing become relevant.

Plaintiffs' argument, however, does not address these elements of the statute. Instead, plaintiffs first go to great efforts to develop the facts surrounding G & L's bid in an effort to demonstrate the contract will involve considerable plumbing work. According to plaintiffs, one of the listed subcontractor categories, "Building Mechanical Work," consisted almost entirely of plumbing work. Defendants dispute that "Building Mechanical Work" was almost entirely plumbing work. The disagreement is of little import, however, because even accepting the premise that the "Building Mechanical Work" consisted virtually entirely of plumbing work, the argument which plaintiffs forge from this factual assertion is without merit. Plaintiffs' argument is that because one of the categories of work called for by the project specifications was almost entirely plumbing work, the statue mandates that G & L must identify a plumbing subcontractor rather than itself as the entity to perform this work. Plaintiffs' argument is based on the language

---

4. Under section 6904 the governmental agency soliciting bids on a particular project must promulgate, either through a meeting with prospective bidders or on its own, a list of subcontractor categories. Then, in accordance with section 6911, for each section 6904 subcontractor category the bidder must supply specific information and assurances. In this way the governmental agency, either alone or in concert with prospective bidders, defines the subcontractor categories which will be subject to the strictures of section 6911.

near the end of section 6911(2). That section first specifies that a general contractor may not identify itself as the entity to perform listed categories of subcontractor work unless conditions are met. It then states, "Illustrative only (and not intended to be exhaustive) of typical subcontractor categories involving their own respective types of specialty work are plumbing, electrical wiring, heating, roofing, insulating, weather stripping, masonry, bricklaying and plastering." Del.Code Ann. tit. 29 § 6911(2) (1991). According to plaintiffs, because the contract contains a significant amount of plumbing work and because plumbing is one of the examples of subspecialty work noted in section 6911(2), G & L was required by that subsection to identify a plumbing subcontractor rather than itself to perform such work. Plaintiffs are incorrect.

The illustrative list of types of subspecialties given in section 6911(2) is not a statement that the requirements of section 6911(2) apply to all subcontractor categories mentioned in that statute. To the contrary, the statute only mandates that a general contractor be licensed to do a particular kind of work if it identifies itself as the entity to perform a kind of subspecialty work belonging to "any subcontractor category set forth on the 'listing' as provided in subsection (b) of § 6904 of this title. . . ." Plumbing was not a subcontractor category set forth on the section 6904 list for this project. The County could have listed "plumbing" as a subcontractor category pursuant to section 6904 since it is one of the types of subspecialties mentioned in the illustrative examples of section 6911(2). However, the County did not list plumbing as a subcontractor category on the section 6904 list for the project. D.I. 18 at 88–90. As plumbing was not a subcontractor category listed pursuant to section 6904, under the plain language of section 6911(2), no violation can be successfully asserted based on G & L's lack of a plumbing license.

It is unclear whether plaintiffs' contention that the listed subcontractor category "Building Mechanical Work" was virtually entirely plumbing work is meant as an argument that the listing of "Building Mechanical Work" was *effectively* a listing of "plumbing" work under section 6904.[5] If so, the argument also fails. Section 6904 leaves it to the governmental body to determine which subcontractors must be identified by the contractors bidding on the project. As to those categories of subcontractors the governmental body lists pursuant to section 6904, bidders must supply additional information and assurances as mandated by section 6911. In this way it is the governmental body, in this case the County, which controls the submission of information and/or assurances about particular kinds of subcontractors. If the County had determined additional information or assurances concerning the plumbing work to be done on this project were necessary before the County would select a bidder, it could have taken advantage of the opportunity given by the statute to require such additional data through the section 6904 listing process. The County did not do so. If the Court were to hold the listing of "Building Mechanical Work" was effectively a listing of plumbing work under section 6904, the Court would be dictating to the County what kinds of subcontractor categories it should have listed pursuant to section 6904 given the type of work involved in the project. The statute wisely leaves those choices to the County, not a court.

■ Plaintiffs also appear to argue that the County violated subsection (1) of the statute because it accepted G & L's bid when G & L failed to identify any plumber for the project at all. Section 6911(1) provides in pertinent part:

(1) Such contract shall be awarded only to a bidder whose bid is accompanied by a statement containing, for each subcontractor category set forth in the "listing" as provided in subsection (b) of § 6904 of this title, the name and address . . . of the subcontractor whose services he intends to use in performing the work or in perform-

---

**5.** Because plumbing was effectively listed, the argument would continue, G & L's "effective" identification of itself as the plumbing subcontractor for the job would violate section 6911(2) because G & L was not a licensed plumber.

ing the work and providing the material for such subcontractor category....

Del.Code Ann. tit. 29 § 6911(1) (1991).

In effect, section 6911(1) forbids acceptance of a bid that fails to identify certain kinds of subcontractors. There is no dispute that G & L failed to identify a plumbing subcontractor in its bid. However, as defendants point out, subsection 6911(1) relies, as does subsection 6911(2), on the section 6904 listing procedure. Section 6911(1) requires identification only of those subcontractor categories that appear on the list generated by the section 6904 process. In this case the section 6904 list did not include plumbing as a subcontractor category. D.I. 18 at 88–90. Thus, no violation of section 6911(1) may be premised on the failure of G & L to identify a plumber.

Plaintiffs nonetheless again urge the Court to find the category "Building Mechanical Work" is equivalent to "plumbing" work. If the Court were to so find, plaintiffs assert, it would follow that G & L was·required to identify a plumbing subcontractor and its failure to do so resulted in a violation of section 6911(1). This argument has been rejected *supra* p. 14.

The Court preliminarily holds the language of subsections 6911(1) and 6911(2) permits G & L's identification of itself as the entity to perform the building mechanical work and the County's announced decision to accept G & L's bid does not violate those subsections.[6]

## 2. Asserted Violation of Del.Code Ann. tit. 30 § 2502 (Supp.1992): G & L's Listing of an Unlicensed Subcontractor

■ As a second possible basis for invalidation the County's determination to accept G & L's bid, plaintiffs assert the County did not possess the ability to accept G & L's bid because G & L was in violation of section 2502(a) of title 30 of the Delaware Code. That section provides in pertinent part:

(a) Any person desiring to engage in business in this State as a contractor shall obtain a license upon making application to the Division of Revenue and paying a fee of $75. This license must be obtained and proof of license compliance must be made prior to, or in conjunction with, the execution of a contract to such person. In the case of contracts in excess of $50,000 which are competitively bid, such person shall have initiated the license application procedure required by this subsection with the Division of Revenue prior to, or in conjunction with, the submission of a bid on a contract, or, in the case of a subcontractor, prior to the submission of a bid by the general contractor.

Del.Code Ann. tit. 30 § 2502(a) (Supp.1992). This provision mandates that a party who is a potential subcontractor on a competitively bid project must either possess a license, or have initiated the license application procedure by the date on which the general contractor submits the bid for the project. One of the parties listed by G & L as a subcontractor, 3D, Inc., a topographic photogrammetrist, did not have a license at the time G & L submitted its bid to the County, D.I. 13 at A–165, in apparent violation of section 2502.

■ In response defendants first assert section 2502 only applies to subcontractors and 3D is not a "subcontractor." Such an assertion flies in the face of the definition of subcontractor given by Del.Code Ann. tit. 30 § 2501(2) (Supp.1992) which includes any entity "which enters into a contract ... directly with a prime contractor ... to perform labor or to perform labor and provide materials in connection with such labor, on a site of contract construction located within this state." As 3D, Inc., is a company which proposes to perform surveying services for G & L, a prime contractor, on a Sussex County, Delaware site, it is hard to comprehend how it cannot be considered an entity contracting with a general contractor to perform labor at a Delaware site. The Court finds 3D is a

---

6. Plaintiff also makes passing reference to the allegation that G & L should have listed a plumbing subcontractor because Addendum 4 directed bidders to identify all "major" subcontractors. The Court refuses to find such a statement *required* identification of any particular subcontractor because to do so would vitiate section 6911's requirement of identification only of "listed" subcontractors, would inject substantial uncertainty into the bidding process and defeat the legislative purpose of section 6911. H.R. 930, 130th Gen.Assembly. (1980).

subcontractor within the meaning of chapter 25 of title 30.

Defendants further contend that even if G & L and 3D did not comply with section 2502, it does not follow that the County's award of the contract to G & L was invalid. Title 30 § 2502 is not a part of the statutory scheme regulating public contracts, i.e., title 29 chapter 69. It is part of a statutory scheme for levying taxes. It is not surprising that nothing in the express language of section 2502 mandates invalidation of a contract between a governmental entity and a third party. The task for the Court is to determine if violation of this section would require invalidation of the County's decision to accept G & L's bid.

Plaintiffs urge invalidation and rely on *E.A. Strout Co. v. Howell,* 85 A. 666 (Del. 1913). That case involved the issue of *enforceability* of a contract where one party to the contract had violated a licensing statute. The statute was silent as to whether unenforceability of a contract to which a violator was a party should follow from the violator's noncompliance. The statute did provide an express remedy in the form of a penalty for each offense. The Supreme Court of Delaware found that the remedy of unenforceability could be implied from the statute. It determined that where the statute applies to certain specific businesses rather than all businesses, its purpose is to regulate those certain businesses and not merely to raise money for the public coffers. In such a situation implying the remedy of unenforceability is proper. *Id.,* at 667–68. In conclusion the Court held, "[T]he aid of the courts in enforcing contracts should be refused to all who do not comply with the condition fixed by the statute as a prerequisite to the right to carry on the specified kinds of business, in the course of which the contract in question was made." *Id.,* at 668.

Defendants urge that no remedy of invalidation exists and rely on *Mendolia v. Zakrzewski,* 22 A.2d 835 (Del.Super.Ct.1941). That case held where a licensing statute is merely revenue raising rather than regulatory and is silent as to the enforceability of a contract entered into by a violator of that statute, the contract is not rendered unenforceable. This holding is in harmony with *Strout.*

Both plaintiffs and defendants apparently believe that under *Strout* and *Mendolia* if section 2502 is found to have a regulatory purpose in addition to any revenue raising purpose, any violation of that section will render the County's determination to accept G & L's bid void. The parties then argue over the purpose of section 2502. Plaintiffs contend section 2502 serves a regulatory purpose. Defendants assert section 2502's sole function is to raise revenue. They contend this conclusion is mandated by the fact that the statute does not specify penalties to be imposed on one violating the statute. This, however, was not the criteria used by the *Strout* Court in determining whether the statute possessed a regulatory purpose. The Delaware Supreme Court in *Strout* found the existence of penalties irrelevant in making this determination. *Strout,* 85 A. at 668. Instead, the Court looked to whether the statute required licenses of all businesses, or whether it required only certain businesses to comply. *Id.,* at 667.

Section 2502 does not require all businesses to be licensed. Licensing is required only of contractors and subcontractors as defined in section 2501 of that chapter. Under the reasoning of *Strout* the failure to require the licensing of all businesses dictates a finding that the statute has a regulatory purpose. This conclusion is bolstered by the requirement that the business may not contract in the state until the license has been secured and that the license shall only issue upon certain conditions. These conditions include that the business furnish a surety bond to ensure the payment of taxes and a showing that it possess workers' compensation insurance, all for the purpose of preventing specific harms these particular businesses might cause. Del.Code Ann. tit. 30 § 2502 (Supp. 1992). From this it may be fairly inferred the statute serves a regulatory purpose.[7]

---

**7.** Plaintiffs also point out that an examination of the earliest version of the present section 2502, as mandated by *Strout,* also evidences the statute's regulatory effect. *See* 18 Del.Laws Ch. 555 § 2 (1889).

The Court does not agree with the parties, however, that under *Strout* and *Mendolia* a finding that section 2502 is regulatory in nature mandates voiding the County's decision to accept G & L's bid. The *Strout/Mendolia* line of reasoning merely compels the conclusion that the Court should not aid a violator of a regulatory licensing statute by enforcing, at the request of the violator, an agreement under which the violator contracts to perform services for which it is not licensed. *Strout*, 85 A. at 668. In the present case neither G & L nor 3D, Inc. (the true violator) sue to enforce any right. Yet that was all the holding of *Strout* forbade. The Court declines to expand the *Strout/Mendolia* holding to enjoin a public entity from contracting with a general contractor whose subcontractor violates section 2502.

The Court preliminarily holds the fact that one of G & L's proposed subcontractors, 3D, Inc., did not possess a contractor's license at the time G & L submitted its bid to the County does not render the County's decision to accept such bid improper.

### 3. *Asserted Arbitrary and Capricious Action*

■ Plaintiffs next assert the County's determination to accept G & L's bid was arbitrary and capricious and therefore invalid. Under Delaware law, if a bid does not conform to the advertised plans and specifications in some material way, the County should reject the bid. *Claus v. Babiarz*, 185 A.2d 283, 287 (Del.Ch.Ct.1962). The County has decided to accept G & L's bid. The question, therefore, becomes whether G & L's bid failed to conform to the bid specifications in some material way. Plaintiffs contend G & L's bid did not conform because G & L failed to use the land already owned by the County known as the Hercules site in its bid for the contract and because G & L failed to identify co-venturers in its bid.[8] The Court finds plaintiffs' nonconformation argument unpersuasive.

### a. *G & L's Failure to Utilize the Hercules Site in Its Bid*

■ PG's bid contemplated use of the Hercules site in combination with additional pieces of land. *See* D.I. 13 at A–134, A–139. Defendant G & L, on the other hand determined to use only one piece of land, known as the "Townsend site" which would accommodate the entire project. *Id.* at A–205(b). Plaintiffs contend G & L's bid failed to conform to the requirement in the project specifications that all bidders use the Hercules site as part of their bids for the proposed wastewater treatment and disposal facility, or to show that use of that property was not practical or permittable. Because G & L did neither, argue plaintiffs, G & L's bid materially differed from the bid specifications rendering the County's determination to accept such bid arbitrary.

Plaintiffs' argument stems from language in Addendum 3 to the project specifications which states, "f. County-owned land, known as "Hercules Site", is available and shall be utilized to the maximum extent practical and permittable for siting of treatment plant and/or partial spray irrigation facilities and/or biosolids application. (Location Map is enclosed)." D.I. 13 at A–93. Defendants, relying on other language in the project specifications, dispute plaintiffs' interpretation of the project specification's requirements. The Court must determine whether use of the Hercules site was totally at the discretion of the bidders, as defendants contend, or whether as plaintiffs argue the project specifications mandated, except in specific instances, the bidder use the Hercules site in its bid.

Plaintiffs assert the language of Addendum 3 stating that the " 'Hercules site' [ ] is available and shall be utilized …" mandates use of such site except in one circumstance. According to plaintiffs, a bidder could design a facility without using the Hercules site only

---

8. Plaintiffs assert this nonconformation was material because the Hercules site was not large enough to accommodate the entire project and therefore required PG not only to acquire additional land for disposal of solid and liquid products, but also to anticipate spending large sums for the pipe work necessary to transport these

products to the additional sites. By avoiding use of the Hercules site, contend plaintiffs, and by siting the entire facility at one location G & L was able to reduce such costs and submit a lower bid than PG. Defendants do not dispute the materiality of any asserted nonconformance.

if that site was not practical or permittable. Absent this one condition, plaintiffs contend, the use of the word "shall" mandated that G & L use the Hercules site in its bid.

Defendants attempt to rebut this argument by first pointing to other language in Addendum 3 which they say demonstrates a bidder was not required to use the Hercules site, but could instead use other real estate. The referenced language states,

> 2. The project scope has been revised to include the following:
>
> * * * * * *
>
> c. Selection of treatment plant site and clear title transfer of site ownership to County prior to construction, if site is not already County-owned.
>
> d. Selection of spray irrigation site(s) and 20 year lease of site(s) to County, if site(s) is not already County-owned.
>
> e. Selection of biosolids application site(s) and 20 year lease of site(s) to County if site(s) is not already County-owned.

D.I. 13 at A–92. According to defendants these sections indicate that real estate other than the Hercules site may be used. Plaintiffs agree. However, plaintiffs argue convincingly that the above language does not mean other real estate may be used *to the exclusion of* the Hercules site. As even G &

L asserts, "[I]t was universally recognized that the Hercules property could, at best, accommodate only a limited portion of the Project." D.I. 17 at 38. *See also* D.I. 13 at A–292; D.I. 18 at B–23. Thus, according to plaintiffs, the reference to other real estate appeared because property *in addition to* the Hercules site would be needed to accommodate the full scope of the project. Defendants' argument does nothing to derogate from the mandated use of the Hercules site stated by Addendum 3.

Defendants next rely on the language of Addendum 5 of the project specifications which states,

> 2. INSTRUCTIONS TO DE-SIGN/BUILDERS.
>
> Design/Builders shall complete PROPOSAL EVALUATION FORM, as provided herewith, and submit as an attachment to the PROPOSAL FORM.
>
> Contract award will be base [sic] on the lowest responsible proposal, using Item 3 from PROPOSAL EVALUATION FORM as the basis of comparison. Note that the actual contract will be written for the amount of the Total Base Bid (Item 1 from PROPOSAL EVALUATION FORM).

D.I. 13 at A–80. The proposal evaluation form [9] Item 1 directed the bidder to enter

---

**9.** The proposal evaluation form stated:

| Item | | Amount |
|---|---|---|
| 1. | Total Base Bid | $_____ |
| | (Enter amount from page P–3 of Proposal) | |
| 2. | If DESIGN/BUILDER proposes to utilize Hercules site, check YES and enter $1,979,332. Otherwise, check NO and enter $0. | $_____ |
| | YES _____ NO _____ | |
| 3. | Total Project Cost (Add 1 + 2) | $_____ |

NOTE: DESIGN/BUILDER must complete this form and submit as an attachment to the PROPOSAL FORM. Failure to do so shall

the amount of its total base bid. Item 2 asked the bidder if it proposed to use the Hercules site. If so to enter the fixed dollar amount of $1,979,332.00. If the bidder did not propose to use the Hercules site, it was instructed to enter $0.00. Item 3 directed the bidder to add Items 1 and 2 to arrive at the total cost of the project. *Id.* at A–89. This form was devised because a bidder that used the Hercules site would otherwise reflect a lower cost for real estate acquisition than one who did not use the site. This result would occur because a bidder using the Hercules site did not have to acquire as much real estate to complete the project, as the County already owned some property. This lower real estate acquisition cost, however, would be an unrealistic reflection of the total cost of the project given that the value of the Hercules property was nearly two million dollars. By requiring a bidder using the site to include in its final bid the full cost of all the real estate used by that bidder for the project, the County could directly compare the total cost of a bid which did not involve use of the Hercules site with a bid which did use the Hercules site.

Defendants contend the fact that Addendum 5 and attached proposal evaluation form state "*If* the DESIGN/BUILDER proposes to utilize Hercules site, check YES. . . . Otherwise, check NO . . . ." clearly indicates that a bidder may utilize other real estate to the exclusion of the Hercules site. The Court

and the plaintiffs agree. Defendants and plaintiffs differ in that plaintiffs urge that a bidder may exclude use of the Hercules site only in one particular circumstance, not present here. Defendants urge a bidder may exclude use of the site at its own discretion. Defendants contend this is so because the language in Addendum 5 indicating exclusion of the Hercules site is permissive effectively supersedes the earlier published language of Addendum 3 which mandated use of the Hercules site. Defendants, however, provide no support for their theory that the language of Addendum 5 upon which they rely supersedes the language of Addendum 3 upon which plaintiffs rely.[10]

Plaintiffs' argument is based on the language of Addendum 3 which states the site "shall be utilized to the maximum extent practical and permittable. . . ." According to plaintiffs, this language read along with the language of Addendum 5 shows nonuse is sanctioned *only* if the site were to be nonpermittable or its use not practical. Plaintiffs' argument must fail, however, in that it fails to comport with reality. Although Addendum 3 appears to require use of the site unless practical or permittable, on the present record there is no indication that it was made known to the bidders prior to submission of the bids whether or not the site was permittable for the method of sewage disposal selected by the County. Given the state of the record, the Court must assume at this

render the proposal non-responsive and be grounds for its rejection by the Owner.

NOTE: Contract award will be based on the lowest responsible proposal, using Item 3—Total Project Cost as the basis of comparison.

The actual contract will be written for the amount entered as Item 1—Total Base Bid.

**10.** To the contrary, it appears from a reading of Addendum 5 and other addenda that the language relied upon was not meant to supersede any language in Addendum 3. The language highlighted by defendants is the second part of Addendum 5. The first part of that addendum states,

1. Addendum No. 3, Item 9a. Delete the sentence "The wastewater treatment plant shall be located outside the 100–year flood zone." Substitute therefor the sentence "The treatment works structures, electrical and mechanical equipment shall be protected from physical damage by the 100–year flood."

D.I. 13 at A–80. This first part of Addendum 5 demonstrates the County clearly knew how to supersede the language of Addendum 3 if it so chose. Yet the very next part of that addendum, the part which defendants urge supersedes the language of Addendum 3, states only that the bidder shall complete the attached proposal evaluation form. It does not state that this directive should be substituted for any of the language in Addendum 3. It does not even mention Addendum 3. In short, it contains no indication that it was intended to supersede anything.

juncture it was unknown at the time the bids were submitted if the necessary permits could be obtained for the Hercules site. Since permittability was unknown at the time of bid submission, the Court refuses to hold that the determination as to whether or not a bidder was required to use the site turned on something that was not known to any of the bidders. Plaintiffs' effort at harmonizing the language of Addendum 3 and Addendum 5 must be rejected.

While plaintiffs' attempt to harmonize Addenda 3 and 5 is plausible, it cannot be accepted at this procedural stage based on the record as emphasized in the briefing and at oral argument. The Court concludes that at best the two addenda are in conflict with there being no basis at this preliminary injunction stage to reject the clear import of Addendum 5, that the Hercules site need not be used. Therefore, the Court preliminarily holds nothing in Addendum 3 rendered the County's actions in deciding to accept G & L's bid arbitrary.

### b. *G & L's Failure to List Joint Venturers*

Plaintiffs make one final argument. They urge the County's award of the contract to G & L was arbitrary and must be set aside because in G & L's bid it identified only itself as the bidder when, according to plaintiffs, G & L was a co-venturer along with Tatman & Lee Associates, Inc. ["Tatman & Lee"] and J.G. Townsend, Jr. & Co. ["Townsend"].

In March of 1992 G & L, Townsend and Tatman & Lee entered into an agreement to "cooperate in the preparation and submission of a joint project proposal to the County Council of Sussex County, Delaware ... for the design, construction and possible operation" of a wastewater treatment facility. D.I. 13 at A–144–47. A further agreement dated May 10, 1993 stated, "The proposal will be submitted under the name of George & Lynch. If George & Lynch is the successful bidder, an agreement between the three parties will be drawn up upon award of the

contract to George & Lynch." D.I. 13 at A–148. The bid was in fact submitted in the name of George & Lynch. D.I. 13 at A–166. The information supplied by G & L on the bid documents makes no mention of any partners or joint venturers. *See* D.I. 13 at A–166–188.

Plaintiffs contend G & L should have identified Townsend and Tatman & Lee for two reasons. First, plaintiffs argue, the language of the bid proposal form required G & L to identify the other parties. Second, while plaintiffs admit that no statutory provision explicitly mandates the identification of joint venturers, it asserts such a mandate may be implied from Del.Code Ann. tit. 29 § 6907 (1991).[11]

An indication that all joint venturers should have been identified is found in the language of the bid proposal form filled out by G & L. It states,

> By submission of this PROPOSAL, each DESIGN/BUILDER certifies, and in the case of a joint PROPOSAL each party thereto certifies as to his own organization, that this PROPOSAL has been arrived at independently....

D.I. 13 at A–166. This language, though not a clear demand for identification of joint venturers, indicates that where joint venturers have participated in the submission of the bid and will participate in the performance of the project, each should be identified and complete the requested certification.

Even without such language, however, Del. Code Ann. tit. 29 § 6907 (1991) implicitly requires identification of joint venturers. First, section 6907 requires the County to award the contract to the "lowest responsible vendor." Del.Code Ann. tit. 29 § 6907 (1991). Second, the section also states that the County may choose not to award the contract to that vendor if it believes its interests will be best served by awarding the contract to a different vendor: "In determining how the interest of the State or contracting county is better served in making an

---

11. Plaintiffs also make reference to the fact that G & L's failure to identify the other parties rendered G & L in violation of the bid proposal's noncollusion statement and constituted a false representation. Plaintiffs have failed to provide any support for these arguments or develop them adequately enough for the Court to address them.

award to other than the lowest responsible vendor, the agency may take into consideration unsatisfactory performances on any previously awarded contract by the vendor being rejected." *Id.* Both of the above proscriptions of section 6907 promote the award of contracts to bidders who are financially and otherwise responsible. G & L asserts the goal of awarding a contract to a responsible entity has been met as it is the only entity under obligation to the County and that it is a responsible firm. However, the fact that G & L is the only entity which would be under direct contract to the County, and thus the only entity against whom the County would have recourse in the form of a suit for breach of contract if the job were to go awry, does not meet the goals of section 6907. The proscriptions of section 6907 specifically enable the County to assess bidders' qualifications before awarding the contract so that it is not limited to contractual remedies in the event the County is dissatisfied with a party's performance. Section 6907 permits the County to assess the level of an entity's financial and other responsibility, including an assessment of the adequacy of past performance, in advance so that it may avoid any potential problems by awarding the contract to another firm. This goal could be thwarted if joint venturers were not identified in advance of an award of the contract.

 Having determined section 6907 implicitly requires identification of co-venturers does not end the matter. Section 6907 does not require that a nonconforming bid must be rejected by the County. Where, as here, the plaintiffs are parties other than the awarding agency and there is no indication of fraud or material misrepresentation, the Court holds G & L's failure to identify co-venturers does not mandate invalidation of the County's decision to accept G & L's bid.[12] *See Coken Co. v. Department of Public Works,* 9 Mass.App.Ct. 586, 402 N.E.2d 1110 (1980) (mere name change, absent fraud, does not effect bidder's qualifications); *Judson Pacific–Murphy Corp. v. Durkee,* 144 Cal.App.2d 377, 301 P.2d 97 (1956) (awarding

agency not prevented from awarding contract to low bidder on the basis that contract would be performed by one company while bid was submitted in name of one of that company's operating divisions).

In summary, the Court holds that plaintiffs are not likely to prevail on the merits after a final hearing.

## B. POTENTIAL INJURY TO THE PARTIES AND THE PUBLIC

 The Court next focuses on the potential harm to each of the parties to this litigation and to the public. If the preliminary injunction is ordered G & L will suffer injury because G & L will be delayed in beginning the project until the matter is ultimately decided. Plaintiffs, on the other hand, face substantial and irreparable harm if the preliminary injunction is not issued. The County has announced its decision to award the contract to G & L. Unless a preliminary injunction is issued G & L will proceed to perform that contract, an occurrence which will prevent plaintiffs from obtaining the primary relief they seek, i.e., disqualification of G & L's bid and award of the contract to PG. Plaintiffs' alleged injury is somewhat blunted, however, because if the preliminary injunction were to issue, such injunction would prevent Sussex County from awarding the contract to G & L, but would not necessarily result in award of the contract to PG. For example, on the facts of this case, the County might possibly have the right to put the project out for new bids.

Defendants assert the public will not be harmed if the preliminary injunction is not issued. G & L contends that if the preliminary injunction is issued the public will be harmed at least to some extent because a preliminary injunction will delay the project. The County contends the public interest is best served by denying the requested injunction thereby enabling G & L to perform the contract because G & L, as low bidder, will save the public money.

If it appeared plaintiffs would be successful in a final hearing on the merits, the Court

---

12. There is left for another day the issue of whether an awarding agency would be able to successfully contend a bidder's failure to identify co-venturers mandates invalidation of a contract it awarded to such bidder.

would disagree with defendants' arguments on the issue of harm to the public criteria. The Legislature has determined how the public interest will be best served in the area of public contracts. Title 29, Chapter 69 of the Delaware Code embodies that determination. If it appeared the provisions of that chapter were violated, the Court would have to conclude the interest of the public would not be best served by permitting the violation. However, it does not appear either the statutory or common law relating to public contracts requires invalidation of the County's announced decision. Under such circumstances, the public interest is best served by denying plaintiffs' request for preliminary injunctive relief and allowing the project to go forward.

## IV. CONCLUSION

The Court determines preliminarily that the County's decision to accept G & L's bid on the project did not violate either Del.Code Ann. tit. 29 § 6911 (1991) or Del.Code Ann. tit. 30 § 2502 (Supp.1992). Further, the County's determination to accept G & L's bid was not arbitrary either because G & L failed to use the Hercules site in its bid or because it planned a joint venture with other firms not named in the bid papers. Consequently, the plaintiffs have not demonstrated a probability of success at a final hearing on the merits. An order will be entered denying the application for preliminary injunction.